**Antonio LOPEZ, Petitioner–Appellant,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Respondent–Appellee.**

**No. 577, Docket 94–2004.**

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1994.

Decided June 22, 1995.

---

Darrell B. Fields, Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York City, for appellant.

Charles J. Hines, Dist. Atty. Kings County, Brooklyn, NY (Annette G. Hasapidis–Marshall, Roseann Mackechnie, Shulamit Rosenblum, Asst. Dist. Attys., of counsel) for appellee.

Before: OAKES, ALTIMARI, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Petitioner Antonio Lopez appeals from the denial of his petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York (Reena Raggi, District Judge). On appeal, Lopez challenges the district court's rejection of his claim that his attorney was hampered by a conflict of interest during sentencing that deprived him of effective assistance of counsel in violation of the Sixth Amendment.

## I. Background

On October 31, 1982, Lopez shot at three people in Brooklyn, New York, killing one of them. He was subsequently arrested and charged with one count of murder in the second degree, two counts of attempted murder in the second degree, and one count of criminal possession of a weapon in the second degree.

After Lopez's trial began in the Supreme Court in Kings County, New York, the court conducted a hearing pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1971), and determined that, if the defendant were to testify, the prosecutor could question him as to whether he had been convicted of a felony. Following the hearing, the defendant inquired through counsel whether an earlier plea offer of fifteen years to life was still available. The court answered that it was not, but indicated that it would sentence Lopez to eighteen years to life in exchange for a plea of guilty to the entire indictment. Faced with the alternative of a sentence of twenty-five years to life if he went to trial and were convicted, Lopez decided to plead guilty.

During the plea colloquy, Lopez first stated that he had shot at the three persons because "I thought they were going to kill me." The court refused to accept the plea on the ground that the defendant was claiming self-defense. Lopez then said "I am guilty, your Honor," indicated that he attacked the group because he was "very angry," and admitted that the group had not approached him, but rather he "went to get them." After further questioning, the court accepted the plea.

Prior to his state court sentencing proceeding on April 18, 1985, Lopez submitted a *pro se* motion to withdraw his guilty plea and secure appointment of new counsel. He claimed that his plea was induced through "threats and coercion, and misinformation by defendant's counsel." In particular, Lopez alleged that his attorney told him that he was in a " 'no win' situation" and would be sentenced to twenty-five years to life if he did not accept the plea offer. Lopez also faulted his attorney's trial preparation and his failure to answer Lopez's correspondence.

At the sentencing hearing, Lopez's attorney told the court that he had received defendant's *pro se* motion. "For the record," he stated, "I deny each and every allegation contained therein." At that point, the court told the attorney to "save [his] breath" and denied the motion. The court then proceeded to sentence Lopez without relieving the attorney or inquiring into his willingness or ability to represent his client further. When asked by the court whether he had anything to say on his client's behalf with respect to sentencing, the attorney said that he would "leave the sentencing where it properly belongs, in the hands of the court." Addressing the court himself, Lopez told the court that he was drunk when he committed the crimes. The court sentenced Lopez to the expected sentence of eighteen years to life imprisonment.

Lopez, represented by different counsel, appealed to the Appellate Division. He contended that (1) the trial court erred in denying his motion to withdraw his guilty plea; (2) the trial court should have determined whether there was a basis for a defense of intoxication or self-defense; and (3) his counsel in the trial court had been ineffective. The Appellate Division affirmed his judgment of conviction in all respects, *People v. Lopez*, 126 A.D.2d 749, 511 N.Y.S.2d 333 (1987), and leave to appeal to the Court of Appeals was denied, 69 N.Y.2d 883, 515 N.Y.S.2d 1031, 507 N.E.2d 1101 (1987).

Lopez then filed a habeas corpus petition in the district court alleging that he was denied effective assistance of counsel and that his plea had been involuntary. The district court conducted an evidentiary hear-

ing at which Lopez was represented by a court-appointed attorney and Lopez's trial attorney testified. The district court then dismissed Lopez's petition without prejudice for failure to exhaust state remedies since Lopez had not previously raised the ineffectiveness of his trial counsel at sentencing. After Lopez unsuccessfully moved in state court to vacate his sentence, he refiled the habeas corpus petition. The district court then ruled on the merits of the case and denied the petition. Lopez appeals.

## DISCUSSION

Lopez raises only one argument on appeal. He contends that he was denied effective assistance of counsel since his attorney labored under an actual conflict of interest during the sentencing proceeding, and that the district court erred in refusing to grant his petition on that basis. We hold that Lopez is not entitled to renew his motion to withdraw his guilty plea, but we grant the petition insofar as it requests resentencing with new counsel.

■ "[A] defendant has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994); *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994). Because "sentencing is a critical stage of the criminal proceeding at which [a defendant] is entitled to the effective assistance of counsel," *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977), a constitutional violation may occur if a conflict of interest arises after a defendant is convicted but before he is sentenced.

In this case, the district court correctly concluded that, "[g]iven the charges of incompetence that Lopez had levelled against [his attorney], there was a conflict in this attorney's continued representation" at sentencing. "An attorney has an actual ... conflict of interest when, during the course of the representation, the attorney's and defen-

dant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler*, 7 F.3d at 307 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 1722 n. 3, 64 L.Ed.2d 333 (1980) (opinion of Marshall, J.)).

■ We agree with the district court that Lopez's trial counsel had an actual conflict of interest at the time Lopez was sentenced. In a *pro se* motion to withdraw his guilty plea, which Lopez had presented to the trial court at the commencement of the sentencing proceeding, Lopez alleged that his attorney had coerced him into pleading guilty. At that point, the attorney had an actual conflict of interest: to argue in favor of his client's motion would require admitting serious ethical violations and possibly subject him to liability for malpractice; on the other hand, "[a]ny contention by counsel that defendant's allegations were not true would ... contradict his client." *United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). As it happened, the attorney put his own interests ahead of his client's by denying the truth of Lopez's allegations and thereby attacking his own client's credibility. *See id.* (finding an actual conflict of interest under similar circumstances since "if the allegations in defendant's motion were true, [the attorney's] actions would be tantamount to malpractice"); *Winkler*, 7 F.3d at 307 (citing *Ellison* ); *United States v. Fulton*, 5 F.3d 605, 609 (2d Cir.1993) (citing *Ellison* ).

■ In order to establish a Sixth Amendment violation, Lopez must also show that the actual conflict of interest adversely affected his lawyer's performance. *See Levy*, 25 F.3d at 157; *Fulton*, 5 F.3d at 609. "The test requires a defendant to demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Levy*, 25 F.3d at 157 (quoting *Winkler*, 7 F.3d at 309 (internal quotations and citations omitted)). We think that the test is met with respect to the second alleged lapse in defense counsel's representation.

**42**

■ The first alleged lapse, namely defense counsel's opposition to his client's motion, does not meet the test. The term "plausible alternative defense strategy" does not embrace all possible courses of action open to a defense attorney; it refers to those which a zealous advocate would reasonably pursue under the circumstances. After carefully reviewing the transcript of the plea allocution, we conclude that presentation of this motion was not a "plausible alternative defense strategy." Despite his initial hesitation, Lopez admitted to the state trial court that he had committed the acts charged and that he had done so out of anger rather than self defense. He then indicated that he understood his rights and that he had not been coerced into accepting the plea. In light of these unambiguous admissions by Lopez, a challenge to the voluntariness of the plea would undoubtedly have been rejected and would have risked antagonizing the trial court immediately before sentencing. Moreover, if successful the motion would have jeopardized the availability of a favorable plea and permitted the judge to impose a considerably higher sentence after trial. Under these circumstances, we conclude that the motion lacked " 'sufficient substance to be a viable alternative.' " *Winkler,* 7 F.3d at 309 (quoting *United States v. Gambino,* 864 F.2d 1064, 1070 (3rd Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566 (1989)).

Defense counsel's second alleged failing was his decision to "leave the sentencing where it properly belongs, in the hands of the court." The district court concluded that arguing for a lower sentence was not a plausible alternative defense strategy because the plea bargain had stipulated Lopez's sentence to be eighteen years to life, and because at an earlier bench conference the judge had colorfully indicated that he would not impose a lower sentence even "if Jesus Christ came and did a break dance on this desk."

We believe that an argument for leniency at sentencing " 'possessed sufficient substance to be a viable alternative.' " *Id.* (quoting *Gambino,* 864 F.2d at 1070). The court retained the discretion to sentence Lopez to less than the agreed term of eighteen years

imprisonment. There were mitigating circumstances, such as Lopez's remorse, his obligations to his ten children, and his alleged intoxication at the time of the offense, that a zealous advocate could have raised in arguing for leniency. Moreover, Lopez's attorney had undermined his client's credibility moments earlier by denying the truth of the allegations in the *pro se* motion. In light of the negative impression that such comments could have made on the court, arguing zealously for mitigation at sentencing was not only a viable alternative for the attorney but an advisable one.

That the court had previously declared its intention to sentence Lopez to eighteen years imprisonment does not bear on the viability of an argument for leniency. In *Winkler,* the petitioner contended that a conflict of interest adversely affected his attorney's performance in that the attorney failed to explore a plea bargain with the prosecution. We noted that,

> [a]lthough the state court's findings indicate that in this alleged contract murder case the prosecution would have been highly unlikely to accept a plea agreement, [the petitioner] need not show that a strategy would have been successful.... Even if it is likely to be unsuccessful, the negotiation of a plea bargain in a case in which the evidence is strongly against a defendant is a viable alternative.

*Id.* As in *Winkler,* Lopez had much to gain and very little to lose had his attorney asked the court for a lower sentence. Given the possibility of leniency and the existence of arguably mitigating factors, we believe that such an argument was a "viable alternative" for Lopez's attorney.

We also believe that the second prong of the test for adverse effect—that trial counsel refrained from making an argument for leniency because of the actual conflict of interest—has been met. Even after Lopez's *pro se* motion to withdraw his guilty plea and obtain new counsel was denied, the attorney had the incentive to undermine the credibility, and hence the character, of his client in order to reduce the risk of recriminations for any improper conduct. Thus, instead of zealously advocating leniency, Lopez's lawyer

discredited his client moments before sentencing and was content, perhaps even eager, to "leave the sentence where it properly belongs, in the hands of the court." Given this abdication of the attorney's role as advocate when the judge had the discretion to impose a lower sentence and arguable grounds for leniency existed, we believe that Lopez has shown that an actual conflict of interest adversely affected his attorney's performance in violation of his Sixth Amendment right to effective assistance of counsel.

 The district court concluded, however, that any violation of Lopez's Sixth Amendment right was harmless beyond a reasonable doubt. Harmless error analysis is inappropriate in this context. Once a petitioner has shown that an actual conflict of interest adversely affected defense counsel's performance, prejudice to the petitioner is presumed and no further showing is necessary for reversal. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *United States v. Jones,* 900 F.2d 512, 519 (2d Cir.1990), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990); *Ellison,* 798 F.2d at 1107. Because prejudice is presumed, the violation of Lopez's Sixth Amendment rights cannot be harmless. *See Mathis v. Hood,* 937 F.2d 790, 795 (2d Cir.1991) (requiring automatic reversal if " 'counsel actively represented conflicting interests' and ... 'an actual conflict of interest adversely affected his lawyer's performance' " (internal quotations and citation omitted)); *see also Stoia v. United States,* 22 F.3d 766, 771 (7th Cir.1994) (stating that " '[l]egal representation which is adversely affected by actual conflicts of interest is never considered harmless error' " (quoting *United States v. Tatum,* 943 F.2d 370, 375 (4th Cir.1991)); *McConico v. Alabama,* 919 F.2d 1543, 1548 (11th Cir.1990); *cf. Penson v. Ohio,* 488 U.S. 75, 88–89, 109 S.Ct. 346, 354–55, 102 L.Ed.2d 300 (1988) (holding that a total denial of counsel is legally presumed to result in prejudice and can never be considered harmless error).

Lopez is therefore entitled to be resentenced in state court with new counsel representing him. *See United States v. Swartz,* 975 F.2d 1042, 1048 (4th Cir.1992) (noting that, upon a showing of an actual conflict of interest adversely affecting counsel's performance, a defendant is entitled to a new trial or resentencing). There is no need to permit Lopez to present his motion to withdraw his guilty plea to the state court a second time; the motion was not a "viable alternative defense strategy" when initially presented, and was considered and rejected by the district court after a full evidentiary hearing in which Lopez was represented by new counsel.

### CONCLUSION

For the reasons stated above, we reverse the judgment of the district court and remand to that court with instructions to remand the case to the New York State Supreme Court solely for resentencing.