**Jesse HINES, Petitioner,**

v.

**David MILLER, Superintendent, Respondent.**

**No. 01 CIV 2915 LAK.**

United States District Court, S.D. New York.

July 9, 2001.

Jesse Hines, Petitioner pro se.

Tami J. Aisenson, Assistant District Attorney, Robert M. Morgenthau, District Attorney, New York County, New York City, for Respondent.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner was convicted in New York Supreme Court, New York County, on his plea of guilty of murder in the second degree and sentenced to an indeterminate term of fifteen years to life imprisonment. He now seeks a writ of habeas corpus, contending that he was deprived of his rights to due process of law when the plea court denied his motion to withdraw his guilty plea without appointing new counsel or holding an evidentiary hearing and of his right to the effective assistance of counsel.

*Facts*

*The Guilty Plea*

Petitioner was indicted in 1995 on charges, including second degree murder, in connection with the death of Earl Murray on January 23, 1994. On June 13, 1996, petitioner appeared before Justice Joan Sudolnik and entered a plea of guilty to the second degree murder charge in full

satisfaction of the indictment. During the course of the proceedings, and prior to accepting the plea, Justice Sudolnik fully explained petitioner's rights to him. The following colloquy then took place:

"THE COURT: Now, has anyone including your lawyer, assistant district attorney, anybody at all threatened or forced you anyway to get you to plead guilty?

"THE DEFENDANT: No.

"THE COURT: I have indicated to your attorney after speaking to him and the assistant district attorney that on the date of sentence I would sentence you to fifteen years to life. That would be the sentence in this case. Other than that promise as to sentence, has any other promises been made to get you to plead guilty?

"THE DEFENDANT: No." [1]

The Court then proceeded to question defendant about the crime in response to which defendant admitted that he shot Earl Murray with a gun on the date in question.[2] The case was set for sentencing on June 24, 1996.

*The Motion to Withdraw the Plea*

Less than one week before sentencing, the defendant filed a *pro se* motion to withdraw his plea.[3] The motion papers appear to be forms prepared by a jailhouse lawyer or other lay person, the blanks in which were filled in by or on behalf of petitioner. The papers include four purported affidavits. The first is a one page, unsigned document which recited that the "plea was the product of unfortunate and undue pressure placed upon me … as a result of counsel's insistence that I …

plead guilty on the promise that I would Get less Time and in a period of [illegible] and frustration I submitted to counsel's total negative outlook." The second, despite its label, is a notice of motion, contains no factual allegations, and is unsigned. The third is a one page, unsigned document that bears the typewritten name of the petitioner at the bottom and states that petitioner pleaded guilty because an unnamed police officer told him that he would be released on his own recognizance if he entered such a plea. The fourth, and the only signed "affidavit" (although it was not sworn before a notary), asserts that petitioner pleaded guilty for unspecified "reasons which are outside the record of the Court proceedings" and did not understand the consequences of his actions.[4]

When the case came on for sentencing before Justice Sudolnik, defense counsel declined to comment on petitioner's allegation that counsel had pressured him into pleading guilty but asked to be relieved in the event the court allowed withdrawal of the plea.[5] The court then questioned petitioner, pointing out that he had stated on the occasion of the plea that no one had forced him to plead guilty. Defendant responded that his counsel "wanted me to cop out" from the outset because he had "no chance to win at trial." [6] The court then noted that defendant had inculpated himself fully when he entered the guilty plea, that he then had stated that no one had forced him to plead guilty, and denied the motion. Sentencing occurred immediately.

*State Court Appellate Proceedings*

Petitioner appealed to the Appellate Division, arguing that the denial of the mo-

---

1. Ans. Ex. A, at 4–5.

2. *Id.* at 5–6.

3. *Id.* Ex. C.

4. *Id.*

5. *Id.* Ex. B, at 2.

6. *Id.,* at 4–5.

tion to withdraw the plea without appointing new counsel and without conducting an evidentiary hearing violated his rights to due process of law under both the United States and New York Constitutions as well as the New York Criminal Procedure Law.[7] Petitioner submitted a supplemental brief *pro se* in which he argued that he had received ineffective assistance of counsel, in violation of both federal and state constitutions, because, among other things, his attorney used a video tape of his confession to induce him to plead guilty.[8]

The Appellate Division, First Department, affirmed the conviction.[9] It held that "[t]he record establishe[d] that defendant made a voluntary plea and fail[ed] to substantiate his claims of coercion and innocence." It went on to reject his ineffective assistance claim, stating that "[t]he conduct by his attorney that defendant claimed to have been coercive amounted to nothing more than the attorney's professional opinion on the strength of the case and sound advice to plead guilty."

Petitioner then applied for leave to appeal to the New York Court of Appeals. The letter seeking leave, however, articulated no specific arguments. It simply enclosed the Appellate Division briefs and stated that "[w]e request this Court to consider and review all issues outlined in defendant-appellant's brief."[10] The Court of Appeals denied leave by order dated March 19, 2000.[11] This petition was timely filed.

## Discussion

### Exhaustion

■ Respondent first claims that petitioner has not exhausted his claim that he was deprived of federal rights when the plea court denied the motion to withdraw the plea without appointing new counsel, arguing that his brief to the Appellate Division contended "only that the motion should not have been granted without a hearing ..."[12] Respondent, however, overlooks the fact that petitioner's Appellate Division brief specifically contended that "[t]he [plea] court abused its discretion by denying appellant's plea withdrawal motion without appointing new counsel and holding a hearing ..." and, indeed, based the argument in part on the Fifth and Fourteenth Amendments.[13] Accordingly, petitioner adequately raised the point before the Appellate Division. Although respondent has not raised it, there is a broader exhaustion issue in this case, viz. whether petitioner's application for leave to appeal to the New York Court of Appeals was sufficient to present the claims he now raises to that court. In light of 28 U.S.C. § 2254(b)(3), this Court considers the issue.

■ Before raising a constitutional claim in a federal habeas court, a state prisoner is obliged to present that claim to the highest state court with jurisdiction to entertain it.[14] In *Grey v. Hoke*,[15] a habeas petitioner had raised three issues in a brief to the Appellate Division but mentioned

---

7. *Id.* Ex. D, *passim.*

8. *Id.* Ex. E, *passim.*

9. *People v. Hines*, 267 A.D.2d 17, 698 N.Y.S.2d 491 (1st Dept.1999).

10. *Id.* Ex. H.

11. *People v. Hines*, 94 N.Y.2d 921, 708 N.Y.S.2d 360, 729 N.E.2d 1159 (2000).

12. Resp. Mem. 2.

13. Ans. Ex. D, at 17.

14. *See, e.g., Francis S. v. Stone*, 995 F.Supp. 368, 377 (S.D.N.Y.1998), *aff'd*, 221 F.3d 100 (2d Cir.2000).

15. 933 F.2d 117 (2d Cir.1991).

only one of them in a letter application to the New York Court of Appeals. Despite the fact that the petitioner had enclosed a copy of his Appellate Division brief with the letter application, the Second Circuit held that he had not fairly presented the two issues raised only in the Appellate Division brief and not in the letter application, stating that the state court did not have "a duty to look for a needle in a paper haystack." [16]

As Judge Gleeson has explained in some detail, *Grey* has led to divergent lines of district court authority in this circuit,[17] with courts taking a range of views of the strictness of the exhaustion requirement as applied to the form of applications for leave to the New York Court of Appeals. In *Morgan v. Bennett,*[18] however, the Second Circuit clarified the scope of *Grey,* holding that an application for leave that did not specifically discuss any of the issues as to which leave was sought, but that enclosed the petitioner's Appellate Division brief and requested that leave be granted as to all issues outlined therein fairly presented to the Court of Appeals all of the issues raised in the Appellate Division, even where a follow-up letter drew specific attention to some but not all of the issues that had been raised below.[19]

This case is quite different from *Grey* and far closer to *Morgan.* Here, the brief filed in the Appellate Division by petitioner's counsel raised only one issue: whether the plea court had violated petitioner's constitutional rights by denying the motion to withdraw the guilty plea without appointing new counsel and holding a hearing. Petitioner's *pro se* supplemental brief in that court also raised only one issue:

whether trial counsel provided ineffective assistance in coercing petitioner to plead guilty. The application for leave to appeal to the Court of Appeals enclosed "copies of the briefs filed in the Appellate Division" and specifically requested the court "to consider and review all issues outlined in defendant-appellant's brief." Thus, the Court of Appeals was not in substance asked to find a "needle in a paper haystack." The point raised in the brief filed in the Appellate Division by petitioner's counsel was raised squarely in the Court of Appeals. And although the use of the singular in requesting review of the issues "outlined in defendant-appellant's brief" might ground a hypertechnical argument that review was not sought of the issue raised in his *pro se* supplemental brief, the facts that (a) the letter application stated that the Appellate Division *briefs* (plural) were enclosed, and (b) even the respondent has not faulted the application for leave to appeal cut the other way. As each of petitioner's Appellate Division briefs raised only a single issue, and his intention to seek review of everything that had been argued to the Appellate Division was plain, this Court holds that the points petitioner raises here were fairly presented to the New York Court of Appeals; he has exhausted his state court remedies.

*The Merits*

*1. Scope of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the claims presented were adjudicated on the merits in state

---

**16.** *Id.* at 120; *see also Jordan v. Lefevre,* 206 F.3d 196, 198 (2d Cir.2000).

**17.** *Morales v. Miller,* 41 F.Supp.2d 364, 374–75 (E.D.N.Y.1999).

**18.** 204 F.3d 360 (2d Cir.), *cert. denied,* 531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000).

**19.** *Id.* at 369–70.

court proceedings. [20] Accordingly, the first step in considering the merits of the petition is whether the Appellate Division adjudicated the federal constitutional questions that petitioner tenders to this Court on their merits. This is no easy task, given the uncertainty attending the proper construction of the statutory language, "adjudicated on the merits," [21] and the brevity of the Appellate Division's memorandum. Fortunately, it is unnecessary to undertake it here, as the petition fails even if decided under the pre-AEDPA rather than the AEDPA standard.[22]

### 2. Due Process Considerations

■ The attack on the denial of the motion to withdraw the plea has two components, the court's failure to hold an evidentiary hearing and its failure to appoint new counsel for petitioner in light of petitioner's contention that counsel had coerced his plea. The two are interrelated, to be sure. But the latter implicates petitioner's right to the effective assistance of counsel at every critical stage of the case whereas the former independently invokes petitioner's right to procedural due process. The Court begins its analysis of petitioner's claims with the question whether he had a federal constitutional right to an evidentiary hearing on his application to withdraw his guilty plea.

The question whether a defendant is entitled to an evidentiary hearing on a motion to withdraw a plea of guilty typically arises in federal courts in the context of motions made pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure, which authorizes district courts to permit

withdrawal of guilty pleas "if the defendant shows any fair and just reason." [23] And the law on this question is very well settled:

"A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea. Although the standard to be applied in granting a hearing is less rigorous than the standard for granting the motion to withdraw the plea, [citation omitted], the defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing. [citation omitted] No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." [24]

Assuming *arguendo* that the same standard governed petitioner's constitutional right, if any, to an evidentiary hearing on his motion to withdraw his plea, he quite clearly did not satisfy it. When he entered his guilty plea, petitioner admitted his guilt in explicit terms and said that no one had forced him to plead guilty or induced the plea by any promises as to the sentence or otherwise. He manifested his understanding that he would be sentenced to a term of imprisonment of fifteen years to life if he pleaded guilty, precisely the sentence that ultimately was imposed. Thus, when he moved to withdraw the plea, claiming in various signed and unsigned documents that he was innocent, that he had pleaded guilty because an officer told him that he would be released on his own

---

**20.** *See* 28 U.S.C. § 2254(d).

**21.** *See generally Washington v. Schriver,* 255 F.3d 45, 52–55 (2d Cir.2001).

**22.** *See id.* at 55.

**23.** FED. R. CRIM. P. 32(e).

**24.** *United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992). *Accord, e.g., United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997).

recognizance if he so pleaded, and that he had been forced to plead guilty by his attorney, he did no more than contradict his own statements at the time he entered the plea. So too when he elaborated on the latter contention in open court prior to sentencing. Indeed, in asserting that his attorney had forced him to plead guilty by telling him he had no chance to win at trial, petitioner not only contradicted his prior statement, but revealed that the alleged coercion amounted to nothing more than his lawyer giving him his unvarnished advice. Thus, petitioner would not have been entitled to a hearing on his motion if it had been made in federal court under Rule 32(e).

The Court recognizes, of course, that petitioner bases his contention on the Due Process Clause, not on Rule 32(e). But it ought to go without saying that the long accepted standard for granting evidentiary hearings on Rule 32(e) motions is consistent with the Due Process Clause, a conclusion confirmed by a more elaborate constitutional analysis.

Petitioner's guilty plea, and his effort to withdraw it, obviously implicated his liberty interest in freedom from incarceration and thus rendered the Due Process Clause applicable to the withdrawal motion. But there remains the question what process petitioner was due on that motion.

The wellspring of the analysis of this question is *Mathews v. Eldridge*, [25] which made clear that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' "[26] and " 'not a technical conception with a fixed content unrelated to time, place and circumstances.' "[27] The process that is due in a given situation depends upon consideration of:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [28]

Here, the private interest affected by the issue of whether to hold a hearing was significant. Petitioner's right to a jury determination of his guilt or innocence, and possibly his liberty, depended on it. But its significance is mitigated by the fact that petitioner had an unqualified right to a jury trial on guilt or innocence and, to all outward appearances, deliberately waived it when he pleaded guilty. Nevertheless, the first of the *Mathews* factors tends to cut in favor of requiring a hearing. Not so the other factors.

In a case like this, there was little or no risk of an erroneous decision by virtue of the failure to hold an evidentiary hearing. The petitioner raised no basis for vacating his plea that did not contradict his own prior statements made in open court. Moreover, his claim that his attorney forced him to plead guilty by telling him

**25.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although *Mathews* was a civil case, its factors have been applied to decide whether an evidentiary hearing is required in the criminal context. *See, e.g., United States v. Prescott*, 920 F.2d 139, 144 (2d Cir.1990) (sentencing hearing); *United States v. Romano*, 825 F.2d 725, 728–29 (2d Cir.1987) (same).

**26.** *Id.* at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

**27.** *Id.* at 334, 96 S.Ct. 893 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)).

**28.** *Id.* at 335, 96 S.Ct. 893.

that he would probably be convicted if he went to trial would not have justified withdrawal of the plea even if it were true. There is no suggestion that the lawyer did not genuinely believe what he told petitioner, and he would have been derelict in his professional duty if he had withheld that opinion from him.[29] Quite simply, there was no genuine issue of material fact, so it is hard to see how a hearing would have improved the reliability of the factual premises upon which the court decided the motion.

' Finally, the burden on the government of requiring evidentiary hearings on plea withdrawal motions like this one would be substantial and out of all proportion to any conceivable benefit. It is well known that defendants who enter guilty pleas frequently have changes of heart before sentencing, whether because the imminence of a long stretch in prison hits home or because some intervening event seems to undermine the strength of the prosecution's case. Applications to withdraw guilty pleas therefore are common. Requiring evidentiary hearings on all of them, irrespective of their apparent merit, would be costly and play havoc with the administration of the criminal justice system. In circumstances like these—where the judge faced with the motion to withdraw took the plea in the first place and was in a position to form a judgment as to both the sincerity of the defendant's admission of guilt and the voluntariness of the plea, and where the facts claimed by the defendant, even if established, would not require granting the motion—there simply is no reason to impose that cost on the government. There is no need to express any view on the circumstances in which an evidentiary hearing might constitutionally be required.

Accordingly, this Court holds that the failure of the state court to conduct an evidentiary hearing on petitioner's motion to withdraw his guilty plea did not deprive petitioner of his right to procedural due process.

### 3. Effective Assistance of Counsel

 ·Petitioner's theory is that he was deprived of the effective assistance of counsel because his allegation that his plea was coerced by his attorney created a conflict of interest for the attorney and left petitioner effectively unrepresented. And indeed, where there is an actual conflict of interest with respect to an application to withdraw a plea, a defendant is entitled to representation by an attorney not afflicted by the conflict.[30] The flaw in the argument is that there was no actual conflict in this case.

 Generally a defendant with an ineffective assistance of counsel claim must show that the attorney's performance fell below an "objective standard of reasonableness" and that the defendant suffered prejudice.[31] There is a gloss on this familiar *Strickland v. Washington* standard where defendant alleges a conflict of interest. Under *Cuyler v. Sullivan,*[32] a defendant is entitled to a presumption of prejudice when able to demonstrate that "an

---

**29.** *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir. 1996), *cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997); *but cf. Purdy v. United States,* 208 F.3d 41, 45–46 (2d Cir. 2000).

**30.** *United States v. Davis,* 239 F.3d 283, 287–88 (2d Cir.2001).

**31.** *Strickland v. Washington,* 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**32.** 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

actual conflict of interest adversely affected his lawyer's performance."[33]

■ An actual conflict exists only when "the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.' "[34] For example, an actual conflict will arise if an attorney refuses to continue with the representation unless the client complies with the attorney's wishes.[35] But allegations such as those made here—that the attorney strongly urged a guilty plea on the ground that the defendant was unlikely to prevail at trial and would wind up serving a shorter sentence by pleading guilty, even if characterized as coercion—do not create an actual conflict for the simple reason that counsel was not accused of misconduct.[36] He was accused of nothing more than providing his client with professionally appropriate advice.[37]

Arguably the fact that defendant made a claim of coercion during his sentencing "placed his attorney in the position of having to defend himself, and potentially to contradict [defendant], in open court."[38] The Second Circuit pointed to this as a significant concern in *Lopez v. Scully,* where it found an actual conflict when defendant alleged at sentencing that his counsel coerced his guilty plea, thereby forcing counsel either to contradict his client or to argue in favor of defendant's motion to withdraw the plea, potentially triggering liability for malpractice.[39] Although on the face of it, *Lopez* suggests that a well-timed allegation of coercion gives rise to an actual conflict, the Second Circuit has since limited *Lopez,* holding that the mere accusation of coercion is not enough to establish a conflict.[40] Most recently in *United States v. Davis* [41] the Second Circuit indicated that allegations of coercion at a hearing create an actual conflict only where defendant alleges that defense counsel has done more than give advice about the risks of going to trial.[42]

Moreover, even if there were an actual conflict, defendant could not show that it adversely affected the attorney's performance for essentially the same reasons as those cited in *Lopez.* There, as here, the defendant admitted at the plea allocution that he had committed the acts, that he understood his rights, and that he had not been coerced into taking the plea. In this context, a challenge to the voluntariness of the plea was not a "plausible alternative defense strategy" that should have been pursued.[43]

In the absence of an actual conflict, defendant is not entitled to a presumption of prejudice under *Cuyler.* Accordingly, in order to upset a conviction on the ground of

**33.** *Id.* at 350, 100 S.Ct. 1708; *Davis,* 239 F.3d at 286; *United States v. White,* 174 F.3d 290, 295 (2d Cir.1999).

**34.** *United States v. Moree,* 220 F.3d 65, 69 (2d Cir.2000) (quoting *Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. 1708).

**35.** *E.g., Davis,* 239 F.3d at 287.

**36.** *Id.* at 286–87; *Moree,* 220 F.3d at 72.

**37.** *Id.*

**38.** *Davis,* 239 F.3d at 287.

**39.** *Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir. 1995); see also *United States v. Moree,* 220 F.3d 65 (2d Cir.2000) (distinguishing *Lopez* because in *Moree* there was no clear accusation of misconduct nor motion to withdraw the plea).

**40.** *See United States v. White,* 174 F.3d 290 (2d Cir.1999) (limiting *Lopez* to allegations that counsel coerced a guilty plea).

**41.** *Davis,* 239 F.3d at 287.

**42.** *Id.* at 286–87.

**43.** *Lopez,* 58 F.3d at 42.

ineffective assistance of counsel, the petitioner must demonstrate that the representation he received fell below a minimal standard of reasonableness and that the result, had the defendant received appropriate representation, probably would have been different.[44] Here, petitioner's allegations, even if true, provide no basis for questioning the competence of counsel. Petitioner had confessed to the murder both in a handwritten statement and on videotape. Any lawyer who had failed forcibly to bring these facts to the petitioner's attention and to urge acceptance of a plea bargain calling for a term of imprisonment as low as fifteen years would have been derelict in his or her duty.

### Conclusion

For the foregoing reasons, the petition is denied in all respects. The Court grants a certificate of appealability limited to the questions whether petitioner was (1) entitled, as a matter of constitutional law, to an evidentiary hearing, and (2) deprived of the effective assistance of counsel when he moved to withdraw his plea.

SO ORDERED.

---

**44.** *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *White,* 174 F.3d at 294.