# IMPORTANT NOTICE

## "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: APRIL 23, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0157-MR

RICHARD TOWER                                                                APPELLANT


V.
ON APPEAL FROM BOONE CIRCUIT COURT
HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
NO. 22-CR-00772


COMMONWEALTH OF KENTUCKY                                              APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Richard J. Tower II pled guilty to incest, two counts of third-degree rape, two counts of third-degree sodomy, and two counts of first-degree sexual abuse. Pursuant to the plea agreement, Tower was to serve all counts consecutively for a total of forty years' imprisonment with the possibility of parole after eight-and-a-half-years.

After entering his guilty plea, Tower informed the trial court that he wished to withdraw it. Defense counsel requested to withdraw as counsel, but the trial court denied the motion. Defense counsel then filed a motion to withdraw Tower's guilty plea. Ultimately, that motion was also denied because the trial court found that Tower entered his plea knowingly, voluntarily, and intelligently. Tower was sentenced to forty years' imprisonment in accordance with the agreement. He now seeks review on appeal alleging that the trial court

erred by denying counsel's request to withdraw and by denying Tower's motion to withdraw his guilty plea.

## I. Background

On December 20, 2022, a grand jury indicted Tower on one count of incest, two counts of first-degree rape, two counts of first-degree sodomy, and one count of first-degree sexual abuse. He was subsequently charged with another count of first-degree sexual abuse via criminal information, as he waived formal indictment. These charges arose after Tower's then fourteen-year-old daughter participated in a forensic interview wherein she revealed that Tower had sexually abused her. As set forth in the uniform citation:

> In March 2022, the above listed suspect, Richard Tower, engaged in sexual intercourse and deviate sexual intercourse by forcible compulsion with his fourteen (14) year old biological daughter. During a forensic interview at the Northern Kentucky Children's Advocacy Center, the victim stated her father, Mr. Tower, started to talk to her about sex and masturbating and asked if he could show her. Mr. Tower used his fingers to penetrate the victim's vagina and then pulled the victim's shorts and underwear off against the victim's wishes. He then used his mouth in an act of sexual gratification on the victim's vagina. Mr. Tower then pushed the victim against the couch and Mr. Tower stopped when his daughter told him "no" and that it hurt. He then proceeded to once again use his mouth in act of sexual gratification on the victim's vagina.

> When Mr. Tower was confronted with this information by officers with the Florence Police Department, he stated that he did not remember the incident, but insisted he be taken to jail. When asked why, Mr. Tower responded, "because my daughter said I raped and abused her" and "I believe what my daughter said." He stated that he may not remember because he was drinking Knob Creek bourbon, but added there were "no excuses."

On January 4, 2023, Tower pled not guilty. On June 21, 2023, the Commonwealth informed the trial court that Tower was given a plea offer, but

2

Tower rejected it. A jury trial was then set for November 27, 2023. As Tower's trial date was approaching, he agreed to mediation. On October 25, 2023, the trial court entered an agreed order referring the case to criminal mediation. Mediation occurred on December 1, 2023, and after approximately six hours, the parties reached the resolution now at issue. Following mediation, Tower informed counsel that he did not wish to accept the proposed deal, and counsel advised him that mediation was nonbinding and that he could retract his decision. The Commonwealth informed Tower that no more plea deals would be offered if Tower rejected the deal reached during mediation.

On December 6, 2023, Tower entered a guilty plea after being advised of his rights. He pled guilty to incest, two counts of third-degree rape, two counts of third-degree sodomy, and two counts of first-degree sexual abuse. Pursuant to the plea agreement, Tower was to serve all counts consecutively for a total of forty years' imprisonment with the possibility of parole after eight-and-a-half years. Sentencing was scheduled for February 7, 2024. However, on February 1, 2024, defense counsel filed a motion to withdraw as counsel stating: "The undersigned counsel and the Defendant have irreconcilable differences that prevent the continuation of the representation." Subsequently, on February 7, 2024, defense counsel informed the trial court that Tower wished to withdraw his guilty plea. The trial court denied counsel's motion to withdraw but granted defense counsel's motion for a continuance until February 22, 2024.

On February 20, 2024, defense counsel filed a motion to set aside Tower's guilty plea. The motion alleged that the mediator was not impartial

3

and that the Commonwealth pressured Tower into pleading guilty by asserting that it would not offer any subsequent deals and that if he did not accept the plea deal, he would face a potential life sentence. On February 22, 2024, the trial court held a hearing regarding the motion to set aside the plea, which it denied. It then imposed a forty-year sentence pursuant to the plea agreement. Tower now seeks review on appeal as a matter of right. KY. CONST. § 110(2)(b).

## II.  Analysis

On appeal, Tower contends that trial court erred by denying his counsel's request to withdraw, and by denying his motion to withdraw the guilty plea. He requests that this Court vacate the judgment and either grant his motion to withdraw his guilty plea or remand for further proceedings. We decline to do either and affirm the judgment of the trial court.

### A. The trial court did not err when it denied defense counsel's request to withdraw.

Tower contends that the trial court erred by denying defense counsel's motion to withdraw because it denied him counsel at a critical stage of the criminal proceedings. Tower alleges that there was conflict of interest when counsel continued his representation after Tower sought to withdraw his guilty plea on the basis of coercion. He asserts that this is a *per se* Sixth Amendment violation.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. "[T]he Sixth Amendment, as extended to the states by the Due Process Clause of the

4

Fourteenth Amendment, guarantees all criminal defendants the right to counsel." *Commonwealth v. Tigue*, 459 S.W.3d 372, 383 (Ky. 2015). The right to counsel attaches at every critical stage of the criminal proceedings. *Id.*; *Henderson v. Commonwealth*, 396 S.W.2d 313, 314 (Ky. 1965). This Court has affirmatively held "that a motion to withdraw a guilty plea made before entry of the final judgment of conviction and sentence is a 'critical stage' of the criminal proceedings to which the right to counsel attaches." *Tigue*, 459 S.W.3d at 384.

Accordingly, Tower had a right to counsel during the proceedings regarding the motion to withdraw his guilty plea. Here, Tower's defense counsel participated in the proceedings and filed a motion to withdraw Tower's guilty plea as Tower requested. The issue, therefore, is whether the denial of the motion to withdraw resulted in counsel's continued representation being compromised by a conflict of interest. We review a denial of a motion to withdraw counsel for abuse of discretion. *Deno v. Commonwealth*, 177 S.W.3d 753, 759 (Ky. 2005).

To establish an ineffective assistance of counsel claim, "Kentucky courts have adopted the two-prong analysis established in *Strickland*." *Commonwealth v. Lawson*, 454 S.W.3d 843, 846 (Ky. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). "*Strickland* required that: (1) the court find that counsel was ineffective, and (2) that the client suffered demonstrable prejudice as a result of that ineffective assistance." *Id.* The Supreme Court of the United States has held that prejudice is presumed in certain contexts, such as when there is "[a]ctual or constructive denial of the assistance of counsel

5

altogether." *Strickland*, 466 U.S. at 692. Furthermore, "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Zapata v. Commonwealth*, 516 S.W.3d 799, 801 (Ky. 2017) (citing *Strickland*, 466 U.S. at 692). However, this presumption is limited. *Strickland*, 466 U.S. at 692. In this context, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (citing *Cuyler* v. *Sullivan*, 446 U.S. 335, 348 (1980)). This results in a *per se* Sixth Amendment violation. *Tigue*, 459 S.W.3d at 385.

We begin by addressing whether counsel actively represented conflicting interests. Tower argues that a conflict of interest was first apparent when counsel filed a motion to withdraw as counsel. The motion stated: "The undersigned counsel and the Defendant have irreconcilable differences that prevent the continuation of the representation." The trial court had discretion to grant defense counsel's motion to withdraw under Supreme Court Rule (SCR) 3.130(1.16), which states:

> [A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: . . . . (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement; or . . . (7) other good cause for withdrawal exists.

However, SCR 3.130(1.16) further states: "When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Even if counsel alleged grounds for which the trial court could have granted a motion to withdraw as counsel, the trial court

6

is not required to do so under SCR 3.130(1.16).  Thus, the motion itself does not establish a conflict of interest, as the denial of such motion and the continuation of representation falls squarely within the governing rules.

Furthermore, Tower alleges that during the hearing on February 7, 2024, defense counsel "relay[ed] to the court that he was not going to advocate to set aside the plea."  However, counsel merely supported Tower's request that defense counsel withdraw.

> **Defense Counsel:** We have learned that Mr. Tower wishes to withdraw his plea.  We have talked to him at length about that and don't feel as though we can continue to represent with that posture.
>
> **Trial Court:** Well, he has a right to file the motion.  That doesn't mean that there are grounds for the motion.
>
> **Defense Counsel:** I understand.  I have explained that to him, so he knows.
>
> **Trial Court:** So, do you want to present the motion to the court on behalf of your client?
>
> **Defense Counsel:** I would rather we be struck and get his own lawyer and decide what he wants to do.
>
> **Trial Court:** That is what he wants to do, is that what you are saying?
>
> **Defense Counsel:** Yes, sir.
>
> . . . .
>
> **Defense Counsel:** As a matter of law, I think he has got the right to have the lawyer that he wants within reason.  He doesn't want us; he has made that clear.  If he wants to advocate

7

> to set aside his plea, so be it. But I'd ask
> that be done without us.

Tower's claim that counsel would not seek to set aside the plea is unfounded as counsel did file a motion to withdraw the plea after this hearing. Defense counsel requested a continuance, and another hearing was set for February 22, 2024. On February 20, 2024, defense counsel filed a motion to set aside Tower's guilty plea. It provided the following grounds for relief:

1. In October 2023, the Defendant and the Commonwealth entered into an agreement to attend criminal mediation in a final attempt to resolve this case. Retired Judge Anthony Frohlich was appointed as the mediator and the parties attended criminal mediation on December 1, 2023. The parties mediated for approximately 6 hours and ultimately reached an agreement in which the Defendant would plead guilty in exchange for a sentence that was lengthy in overall term, but allowed for the possibility of parole far earlier than the Defendant likely would have received had he been convicted at trial.

2. However, after reflecting on the process that led to his guilty plea, the Defendant feels that criminal mediation was coercive and put undue pressure on him to plead guilty. During criminal mediation, the Defendant made numerous counteroffers to resolve his case that he now believes were not appropriately considered by the mediator nor communicated to the Commonwealth. As a result, during mediation, the Defendant felt as though the mediator had already "picked sides" and was not advocating his position to the Commonwealth with the same force that the Commonwealth's position was being relayed to him. The Defendant was led to believe that if he did not accept a plea deal and agree to a lengthier jail sentence that could result in him spending the majority of his life in prison.

3. Because of this pressure, the Defendant ultimately agreed to a plea deal at the criminal mediation. Days after the mediation occurred, the Defendant had second thoughts on what he had agreed to and

advised undersigned counsel of the same. Defendant and undersigned counsel met and discussed the Defendant's options regarding his recission of the plea agreement. Below counsel advised the Defendant that the agreement reached at mediation was not binding upon him and could be retracted if he so chose.

4. After this conversation, undersigned counsel for the Defendant communicated to the Commonwealth that the Defendant was having second thoughts about the plea deal reached at mediation and advised the Commonwealth the Defendant was not willing to go forward on the deal reached at criminal mediation.

5. On the date of the Defendant's plea on December 6, 2024 [sic], the Commonwealth stated in no uncertain terms that if the Defendant did not accept the offer reached at mediation (or the prior offer made prior to criminal mediation) and enter a guilty plea on that date, there would be no further offers made and the Defendant could take his chances at trial. Undersigned counsel and the Defendant discussed this at length on the date of the plea agreement. Ultimately, after this conversation, the Defendant changed his mind again and entered a guilty plea to the offer made by the Commonwealth.

6. Simply put, the Defendant felt coerced to enter the plea. The Defendant does not believe he entered the guilty plea of his own free will and believes that his hand was forced. The Defendant respectfully requests this Court to allow him to withdraw his previous guilty plea and proceed to trial.

At the hearing on February 22, 2024, counsel argued the facts contained within the motion on Tower's behalf. Thus, defense counsel did advocate to set aside the plea.

Accordingly, the facts alleged to support Tower's claim that his plea was involuntary were insufficient to establish the existence of a conflict of interest. In *Zapata,* this Court held that conflict existed when Zapata filed a motion to withdraw his guilty plea because counsel's deception rendered the plea

9

involuntary. 516 S.W.3d at 801. In *Tigue*, this Court held that a conflict existed when Tigue sought to withdraw his guilty plea because his attorneys threatened him and refused to prepare a defense in order to force him to enter the plea. 459 S.W.3d at 387 ("At this point, the attorney had an actual conflict of interest: to argue in favor of his client's motion would require admitting serious ethical violations and possibly subject him to liability for malpractice; on the other hand, any contention by counsel that defendant's allegations were not true would . . . contradict his client." (quoting *Lopez v. Scully*, 58 F.3d 38, 41 (2nd Cir. 1995))).

Here, Tower's motion asserts only that he felt coerced by the mediator and the Commonwealth; it does not allege any misconduct by defense counsel. Notably, the only alleged conflict is counsel's disagreement with the defendant over withdrawing his guilty plea, which alone does not constitute a conflict of interest. *Sturgill v. Commonwealth*, 533 S.W.3d 204, 209 (Ky. App. 2017). This is not the sort of conflict the *Zapata* and *Tigue* Courts sought to avoid. Tower does allege that he was led to believe that if he did not accept a plea deal, he would get a lengthier jail sentence that could result in him spending the majority of his life in prison. However, accurately informing a defendant of the risks of proceeding to trial does not render a subsequent plea involuntary. *See Edmonds v. Commonwealth*, 189 S.W.3d 558, 570 (Ky. 2006) ("Reasonable forecasts by defense counsel regarding a defendant's fate or likelihood of success at trial do not render a plea involuntary simply because the prediction is unwelcome or undesirable."). Tower was charged with one count of incest,

10

two counts of first-degree rape, two counts of first-degree sodomy, and two counts of first-degree sexual abuse. These charges could have resulted in Tower spending most of his life in prison had he proceeded to jury trial.

Therefore, we find that the trial court did not abuse its discretion in denying the motion because there was no apparent conflict of interest in counsel continuing representation.

However, even if a conflict of interest had existed, the defendant cannot show that it adversely affected defense counsel's performance. In his motion to the trial court, the defendant alleged grounds on which the court could have granted relief. These are the same grounds the defendant now raises on appeal challenging the trial court's denial of his motion to withdraw the guilty plea. Defense counsel effectively argued the only grounds that support a motion to withdraw Tower's guilty plea.

Tower cites to *Sturgill* to suggest that counsel failed to advocate on his behalf, but there are key distinctions between that case and the present matter. In *Sturgill*, counsel never filed a written motion; the withdrawal motion was oral, and the court could only consider evidence elicited from Sturgill's testimony. 533 S.W.3d at 207. Therefore, when Sturgill testified under oath that his guilty plea was against his will and counsel failed to follow up, Sturgill was denied effective representation. *Id.* at 210 ("A review of the record shows that while counsel made the motion to withdraw in form, he offered Sturgill no assistance in accomplishing its objective. Even if counsel did not believe that he could prove that the plea agreement was actually involuntary, he could have

11

urged the court to exercise its discretion to set it aside."). In contrast, Tower's defense counsel filed a motion supporting Tower's claim that his plea was involuntary, effectively advancing his objective.

Therefore, the trial court did not abuse its discretion in denying the motion to withdraw as counsel because it was not presented with any evidence of a conflict of interest. Furthermore, this Court declines to conclude that any alleged conflict arose to the level of a *per se* Sixth Amendment violation.

**B. The trial court did not err by denying Tower's motion to withdraw his guilty plea.**

Tower next alleges that the trial court erred when it denied his motion to withdraw his guilty plea. Before accepting a criminal defendant's guilty plea to a criminal charge, the trial court "must first ascertain that the plea is made voluntarily and with an understanding of the nature of the charge." *Edmonds*, 189 S.W.3d at 565 (citing RCr[1] 8.08). "Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted." *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 241–42 (1969)). The trial court conducted a facially satisfactory *Boykin* colloquy. *See id.* Tower subsequently pled guilty. However, after the trial court accepted the plea, but prior to the sentencing and final judgment, Tower expressed that he wished to withdraw his guilty plea.

"At any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted."

---

[1] Kentucky Rule of Criminal Procedure.

12

RCr 8.10. "If a guilty plea is found to have been entered involuntarily, considering the totality of the circumstances, a trial court must grant a defendant's motion to withdraw the plea." *Edmonds*, 189 S.W.3d at 566. "However, if it was voluntary, the trial court may, within its discretion, either grant or deny the motion." *Sturgill*, 533 S.W.3d at 208. "The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (citing *Sparks v. Commonwealth*, 721 S.W.2d 726, 727 (Ky. App. 1986)). A trial court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion. *Id.* "A trial court abuses its discretion when it renders a decision that is arbitrary, unreasonable, unfair, or unsupported by legal principles." *Id.*

First, Tower alleges that he perceived the mediator as not impartial and not advocating his position. However, this perception is insufficient to render his guilty plea involuntary. The record reflects that Tower made a knowing and voluntary choice among the alternatives of proceeding to trial. Following mediation, Tower informed counsel that he did not wish to accept the proposed deal, and counsel advised him that mediation was nonbinding and that he could retract his decision. Mediation occurred on December 1, 2023, and Tower did not enter his guilty plea until December 6, 2023, providing him ample time to reconsider.

Next, Tower alleges that he felt coerced to plead guilty when the Commonwealth told him it would not offer any subsequent plea offers and that

13

if he did not accept its offer he could face a lengthier sentence. The facts alleged are not enough to render Tower's plea involuntary. *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("We hold that the only course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment."). The Commonwealth was not required to extend Tower another plea offer, and its decision not to do so does not render his plea involuntary.

Tower's fear about spending the majority of his life in prison is simply a natural consequence of plea negotiations, not evidence that his choice was involuntary. The Supreme Court of the United States has thoroughly addressed this issue in *Bordenkircher*.

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.
>
> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging

14

> the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

434 U.S. at 363 (internal citations omitted). Furthermore, any assertion that advisement regarding the defendant's potential life sentence constituted coercion is without merit. As discussed above, the charges Tower faced could have resulted in him spending most of his life in prison had he proceeded to jury trial. The mere fact that defense counsel discussed the potential for a longer sentence if Tower proceeded to trial does not render the guilty plea involuntary. *Edmonds*, 189 S.W.3d at 570. Considering the totality of the circumstances, Tower has failed to show that his plea was made involuntarily. Thus, the trial court did not abuse its discretion. Accordingly, we decline to grant Tower's motion to withdraw his guilty plea.

In the alternative, Tower requests that this Court remand this matter to the trial court or an evidentiary hearing. "The defendant is generally entitled to an evidentiary hearing when it is alleged that the plea was entered involuntarily." *Zapata*, 516 S.W.3d at 801. However, an exception exists. *Id.* "[T]he trial court is free to deny a motion under RCr 8.10 without an evidentiary hearing, 'if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true.'" *Id.* Here, even accepting the defendant's allegations as true, they fail to establish grounds for withdrawal of the plea. Accordingly, the trial court did not abuse its discretion in declining to conduct an evidentiary hearing on the motion. We therefore decline to remand this matter for further proceedings.

15

### III.    CONCLUSION

Based on the foregoing, we affirm.

All sitting.  Lambert, C.J.; Bisig, Conley, Goodwine, Keller and Nickell, JJ., concur.  Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Roy A. Durham
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General