CLAY, Circuit Judge,
dissenting.
I agree with the majority that Petitioner, James Allen Peters (“Peters”), procedurally defaulted his claim that his trial counsel were ineffective in failing to obtain expert medical assistance to assess whether the evidence supported his conviction for first degree assault. I also agree that Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) is inapplicable in this case because Peters was not seeking to represent himself pro se, but rather was requesting the assistance of counsel. However, I cannot join the majority in concluding that Peters was not deprived of his right to counsel during a critical stage of his criminal proceedings. Because I find that Peters was deprived entirely of the assistance of counsel during his plea withdrawal hearing and because the Kentucky trial court failed to appoint substitute counsel for Peters during that hearing, I am convinced that Peters’ Sixth Amendment right to counsel has been infringed and that Peters therefore is entitled to the requested writ of habeas corpus. Accordingly, I respectfully dissent.
I.
In as much as the majority opinion has failed to fully explain the background of this case, I find it necessary to provide the following additional facts:
On August 21, 1996, Peters was charged in Nelson County Circuit Court with one count of first degree rape, pursuant to Ky.Rev.Stat. Ann. § 510.040 (2006), and one count of first degree assault, pursuant to Ky.Rev.Stat. Ann. § 508.010, for the alleged rape and assault of Christy Pierce, Peters’ expense sharing roommate, on July 22, 1996. Upon Peters’ arraignment on the charges, the circuit court appointed a local contract public defender, Thomas Hall (“Hall”) to represent Peters. Hall arranged for another contract public defender, Anne P. Hardy (“Hardy”), to assist in the representation of Peters.
*461 After the entry of Peters’ initial plea of not guilty, the case was set for trial on February 27, 1997. On that date, Peters, following the advice of counsel, filed a motion to change his plea. Peters then pled guilty to both of the counts in the indictment in return for the Commonwealth’s agreement to recommend concurrent sentences of thirty-five years imprisonment for the rape charge and twenty years imprisonment for the assault charge, for a total sentence of thirty-five years imprisonment.
On March 10, 1997, Peters filed a pro se motion to withdraw his guilty plea which read as follows:
Comes now, the Defendant, JAMES ALLEN PETERS, pro se, and respectfully requests the permission of this honorable Court to withdraw his guilty plea entered on February 28, 1997, on the grounds that it was not knowingly, intelligently, and voluntarily entered.
The Defendant has been informed by his counsel, Hon. Tom Hall and Hon. Anne Hardy, that they will be unable to represent him in this motion, and thus Defendant additionally requests that the court appoint alternative counsel to represent him at this and all subsequent hearings.
J.A. on 180. Two days later, on March 12, 1997, Hardy filed a written motion to withdraw as appointed co-counsel because of her prior role in advising Peters to enter a guilty plea on both counts.
On March 20, 1997, the circuit court held a hearing on Peters’ pro se motion to withdraw his guilty plea. At this hearing, Hardy orally presented her motion to withdraw as Peters’ counsel. After Peters indicated that he did not have any objection to the motion, the court granted Hardy’s motion to withdraw on the condition that Hall remain in the case as Peters’ “counsel of record.” Contrary to what the majority asserts, the tape recording of this hearing does not reveal that Peters affirmatively assented to Hall remaining as “counsel of record.” Rather, Peters remained silent during this encounter and appears to have been unaware of what Hall’s presence as “counsel of record” might have meant.
Without confirming whether Peters really did consent to Hall’s presence as counsel of record, the circuit court judge proceeded to consider Peters’ pro se motion to withdraw his guilty plea. The judge reviewed the written pro se motion and then asked Peters if he wished to present the motion on his own. The judge did not inform Peters of the consequences of arguing his motion by himself or that Peters had the right to counsel’s assistance in the presentation of his motion. Peters indicated that he would like to present his arguments, and proceeded to do so with Hall standing silently nearby. In presenting his motion, Peters argued that his guilty plea was not knowing, intelligent and voluntary because: (1) he was unable to intellectually handle the decision at the time it was entered due to illness; and (2) he had been misinformed by counsel, both Hall and Hardy, about the unavailability of certain witnesses whom Peters had hoped would be able to testify on his behalf. In particular, Peters argued that had he not been misinformed by counsel he would not have changed his plea to guilty. After hearing from Peters and without any comments or arguments offered by Hall, the judge denied Peters’ motion to withdraw his guilty plea. The record does not indicate that Hall consulted with or offered any statements on behalf of Peters at any point during the hearing.
On April 1, 1997, Peters filed a pro se motion for reconsideration in which he presented the same arguments that he had presented at the plea withdrawal hearing. The circuit court denied the motion for *462 reconsideration and proceeded to sentence Peters on April 3, 1997. Following the Commonwealth’s recommendation, the court sentenced Peters to concurrent terms of thirty-five years and twenty years imprisonment for the rape and assault charges respectively.
Peters then appealed the circuit court’s denial of his plea withdrawal motion to the Kentucky Supreme Court arguing that he had been denied his Sixth Amendment right to counsel when presenting his motion. On February 19, 1998, the Kentucky Supreme Court affirmed the judgment of the circuit court finding Peters’ Sixth Amendment claim to lack merit.
Following the failure of his direct appeal, on April 27, 1999, Peters filed a pro se motion in the Nelson County Circuit Court to vacate his conviction and sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. In his motion, Peters argued that his trial counsel had committed numerous errors thereby depriving him of his Sixth Amendment right to effective assistance of counsel. After appointing new counsel to represent Peters on the motion and after conducting an evidentiary hearing with regard to it, the circuit court denied Peters’ motion to vacate his conviction and sentence on September 6, 2000, finding Peters’ claims to be both meritless and procedurally defaulted by his failure to raise them in his direct appeal. On October 26, 2001, the Kentucky Court of Appeals affirmed the circuit court’s denial of the motion on the procedural ground. Id. at 286-89. The Kentucky Supreme Court denied Peters’ subsequent request for discretionary relief. Id. at 189.
Having exhausted the available avenues of state post-conviction relief, on March 3, 2003, Peters filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Western District of Kentucky, alleging ten grounds for relief. On April 13, 2006, the magistrate judge issued a report containing findings of fact and law and a recommendation that the district court deny the petition because none of Peters’ claims had merit. After considering Peters’ objections to this report and recommendation, the district court adopted the magistrate judge’s report in full and entered an order denying the petition. The district court, however, granted Peters a certificate of appealability on the issue of whether he was deprived of his Sixth Amendment right to counsel during the presentation of his motion to withdraw his guilty pleas. This timely appeal followed.
II.
When evaluating a habeas appeal, we review the district court’s legal conclusions, including its denial of a writ of habe-as corpus de novo while evaluating its factual conclusions for clear error. Girts v. Yanai, 501 F.3d 743, 752 (6th Cir.2007). As revised by the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), the federal habeas statute for review of state court judgments, 28 U.S.C. § 2254, provides that:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the *463 evidence presented in the State Court proceeding.
28 U.S.C. § 2254(d) (2000). Under this standard, a decision is “contrary to” clearly established federal law as determined by the Supreme Court if “the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision involves an “unreasonable application” of clearly established federal law if a “state court identifies the correct governing legal rule from [the Supreme Court’s] cases but unreasonably applies it to the facts of the particular state prisoner’s case,” id. at 407, 120 S.Ct. 1495, or if it “either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.” Seymour v. Walker, 224 F.3d 542, 549 (6th Cir.2000) (citing Williams, 529 U.S. at 407, 120 S.Ct. 1495). That is, the federal habeas court “should ask whether the state court’s application of clearly established federal law was objectively unreasonable.” Williams, 529 U.S. at 409, 120 S.Ct. 1495.
III.
A.
The Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” U.S. Const, amend. VI. In Gideon v. Wainwright, the Supreme Court held that this Sixth Amendment right to counsel is extended to criminal defendants in state court through the Due Process clause of the Fourteenth Amendment. 372 U.S. 335, 342-43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In interpreting this Sixth and Fourteenth Amendment guarantee, the Supreme Court has long recognized that, because “the right to counsel exists, and is needed to protect the fundamental right to a fair trial,” Strickland v. Washington, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this right entitles an accused “to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.” Id. at 685, 104 S.Ct. 2052. In other words, “the right to counsel is the right to effective assistance of counsel.” Id. at 686, 104 S.Ct. 2052 (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Accordingly, in order to demonstrate a violation of this constitutionally protected right, a habeas petitioner must show that his counsel’s assistance during the course of his criminal proceedings was so ineffective that it undermined the proper functioning of the adversarial process. Id. at 686, 104 S.Ct. 2052; see also Wright v. Van Patten, ■— U.S.-, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008) (per curiam); United States v. Gonzalez-Lopez, 548 U.S. 140, 146-49, 126 S.Ct. 2557,165 L.Ed.2d 409 (2006).
To determine whether a habeas petitioner has made this ineffectiveness showing, we generally apply the two-part test announced by the Supreme Court in Strickland. See Wright, 128 S.Ct. at 746; Florida v. Nixon,, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); Bell v. Cone, 535 U.S. 685, 695-698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Smith v. Robbins, 528 U.S. 259, 287, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). This Strickland standard requires the petitioner to demonstrate that: (1) counsel’s representation was deficient, i.e., it fell below an objective standard of reasonableness; and (2) the petitioner was prejudiced by counsel’s deficient performance, i.e., it *464 is reasonably probable that the result of the proceeding would have been different but for counsel’s errors. 466 U.S. at 688, 694,104 S.Ct. 2052.
In certain egregious circumstances, however, where the representation by counsel has effectively been denied altogether, we do not require a petitioner to demonstrate prejudice in order to prevail on an ineffectiveness claim. See, e.g., Wright, 128 S.Ct. at 746. In particular, in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), which was decided on the same day as Strickland, the Supreme Court “identified three situations implicating the right to counsel that involved circumstances ‘so likely to prejudice the accused that the cost of litigating them effect in a particular case is unjustified.’ ” Bell, 535 U.S. at 695, 122 S.Ct. 1843 (quoting Cronic, 466 U.S. at 658, 104 S.Ct. 2039); see also Nixon, 543 U.S. at 190, 125 S.Ct. 551. These three situations, as explained by Cronic and its progeny, are: (1) the “complete denial of counsel” during “a critical stage” of the criminal proceeding, Cronic, 466 U.S. at 659, 104 S.Ct. 2039; accord Wright, 128 S.Ct. at 746; Bell, 535 U.S. at 695, 122 S.Ct. 1843; (2) counsel’s “failfure] to subject the prosecution’s case to meaningful adversarial testing,” Cronic, 466 U.S. at 659, 104 S.Ct. 2039; accord Wright, 128 S.Ct. at 746 n. 1; Bell, 535 U.S. at 695, 122 S.Ct. 1843; and (3) representation by counsel who is “burdened by an actual conflict of interest,” Smith, 528 U.S. at 287, 120 S.Ct. 746 (quoting Strickland, 466 U.S. at 692, 104 S.Ct. 2052); accord Mickens v. Taylor, 535 U.S. 162, 173-74, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). See also Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir.2007) (listing the three types of cases that lead to a presumption of prejudice); Mitchell v. Mason, 325 F.3d 732, 742 (6th Cir.2003) (same). In such situations, “a Sixth Amendment violation may be found ‘without inquiring into counsel’s actual performance or requiring the defendant to show the effect it had on the trial.’” Wright, 128 S.Ct. at 746 (quoting Bell v. Cone, 535 U.S. at 695, 122 S.Ct. 1843); see also Van v. Jones, 475 F.3d 292, 308 (6th Cir.2007) (identifying the situations in which Cronic prevails and noting that “Cronic was meant to cover those cases in which prejudice was to be assumed [whereas] Strickland would address cases in which prejudice needed to be shown”).
In the instant case, the Kentucky Supreme Court appropriately used the Cronic standard in assessing Peters’ claim that he was deprived of the assistance of counsel during the presentation of his motion to withdraw his guilty pleas. However, the Kentucky Supreme Court unreasonably applied Cronic to the facts of Peters’ case. In particular, the Kentucky Supreme Court unreasonably concluded that Peters was not deprived of counsel during a critical stage of his trial and that Hall was not subject to an actual conflict of interest while serving as the counsel of record during the motion hearing. Because the Kentucky Supreme Court unreasonably applied Cronic to Peters’ case and because the record demonstrates that Peters was, in fact, deprived of the assistance of counsel during his plea withdrawal hearing, I would grant Peters the requested writ of habeas corpus.
B.
Under Supreme Court precedent, “[a]c-tual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.” Strickland, 466 U.S. at 692, 104 S.Ct. 2052; accord Cronic, 466 U.S. at 659, 104 S.Ct. 2039 (“The presumption that counsel’s assistance is essential [for a fair trial] requires us to conclude that a trial is unfair if the accused *465 is denied counsel at a critical stage of his trial.”); see also Van, 475 F.3d at 311-12 (“It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a per se Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable without analysis for prejudice or harmless error.”). The Supreme Court has indicated that such denial of counsel occurs “when counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.” Cronic, 466 U.S. at 659 n. 25, 104 S.Ct. 2039. While counsel’s physical absence during a critical stage certainly constitutes denial of counsel, see, e.g., Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), a defendant may also be denied counsel when a physically present attorney cannot or will not assist the accused. See, e.g., Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (finding denial of right to counsel when trial court order prevented the defendant from consulting counsel about anything during an overnight recess between his direct and cross examinations); Herring v. New York, 422 U.S. 853, 859-63, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (finding denial of right to counsel when trial judge denied counsel the opportunity to present a closing argument); Burdine v. Johnson, 262 F.3d 336, 349 (5th Cir.2001) (finding denial of assistance of counsel when counsel was sleeping during portions of the defendant’s trial); Javor v. United States, 724 F.2d 831, 834 (9th Cir. 1984) (same).
Moreover, although the Kentucky Supreme Court suggested otherwise in its opinion, a plea withdrawal hearing is undoubtedly a critical stage in a criminal proceeding. See United States v. Segar-ra-Rivera, 473 F.3d 381, 384 (1st Cir. 2007); United States v. Davis, 239 F.3d 283, 286 (2d Cir.2001) (“It cannot be gainsaid that a defendant’s guilty plea is the most critical stage of the proceeding as it forecloses his very right to a trial. Consequently, in the face of an allegedly involuntary plea, a plea withdrawal hearing is vital to ensuring the integrity of the process by which guilt may ultimately be determined.”); United States v. Sanchez-Barreto, 93 F.3d 17, 20 (1st Cir.1996); United States v. Crowley, 529 F.2d 1066, 1069 (3d Cir.), cert. denied, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); see also Wright, 128 S.Ct. at 748 (Stevens, J., concurring) (“It is well-settled that a court proceeding in which a defendant enters a plea ... is a ‘critical stage’ where an attorney’s presence is crucial because ‘defenses may be ... irretrievably lost, if not then and there asserted.’ ” (citation omitted)); Nixon, 543 U.S. at 187, 125 S.Ct. 551 (“A guilty plea ... is an event of signal significance in a criminal proceeding. By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one’s accusers.”).
Unlike the majority, I find that Peters was effectively denied counsel during his plea withdrawal hearing — a critical stage in the court’s determination of Peters’ guilt. While Hall technically remained as “counsel of record” during the plea withdrawal hearing, he neither served as counsel in any way nor appeared willing to do so. On the contrary, prior to the hearing, Hall informed Peters that he would “be unable to represent” Peters on the motion. J.A. at 180. During the hearing, he similarly offered no assistance to Peters. Hall presented no arguments on Peters’ behalf, and Peters never consulted with Hall about the arguments he was presenting. Indeed, it is not clear that Peters was even aware that he could consult with Hall. The judge asked Peters: “It says here that you *466 want to present this on your own, is that correct?” Trial Tape 6 at 11:01:46. When Peters answered in the affirmative, rather than informing Peters that he could employ his counsel of record, the judge simply asked Peters: “Is there anything you want to add?” Trial Tape 6 at 11:01:49. Peters then proceeded to present his argument without ever consulting Hall, who likewise never offered to help his “client.”
On these facts, I am convinced that Peters was “eonstructive[ly] deni[ed] the assistance of counsel altogether,” Strickland, 466 U.S. at 692, 104 S.Ct. 2052, and was thus deprived of his Sixth Amendment right to counsel. The Kentucky Supreme Court’s failure to reach this conclusion was not only an objectively unreasonable application of Cronic, but was also premised on an unreasonable determination of the facts in light of the evidence presented. In its review of Peters’ conviction on direct appeal, the Kentucky Supreme Court found that Peters was not denied the assistance of counsel because Hall “stood with him during the entire proceeding and conferred with him both before and during the motion, even interjecting twice on his behalf.” J.A. at 129. The tape recording of this motion hearing, however, does not demonstrate that Hall ever consulted with Peters or offered any statements, let alone arguments, on Peters’ behalf. This tape recording is sufficiently “clear and convincing” to rebut the presumption of correctness that we generally afford state court determinations of fact. 28 U.S.C. § 2254(e)(1).
Accordingly, I would find that Peters is entitled to a writ of habeas corpus on this ground alone. Nevertheless, even if the majority were correct that Peters was technically represented by counsel — namely, Hall, who was serving as “counsel of record” — at his plea withdrawal hearing, I would still find that Peters is entitled to relief because Hall would have been subject to an actual conflict of interest, rendering him unable to effectively represent Peters, during the hearing.
C.
It is clearly established federal law that a defendant’s Sixth Amendment right to counsel is violated “when counsel is burdened by an actual conflict of interest.” Strickland, 466 U.S. at 692, 104 S.Ct. 2052; accord Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (holding that “a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief’); Fautenberry v. Mitchell, 515 F.3d 614, 628 (6th Cir.2008) (“[A] habeas petitioner can establish an ineffective-assistance claim without having to show prejudice if he demonstrates that his counsel labored under an ‘actual conflict’ of interest.’ ”). To obtain relief on such grounds, a defendant must “establish that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler, 446 U.S. at 350, 100 S.Ct. 1708; accord Mickens, 535 U.S. at 171 n. 5, 122 S.Ct. 1237 (“An ‘actual conflict,’ for Sixth Amendment purposes, is a conflict of interest that advei'sely affects counsel’s performance.”); Fau-tenberry, 515 F.3d at 628.
Actual conflicts of interest may arise from counsel’s representation of different parties with competing interests, see, e.g., Wood v. Georgia, 450 U.S. 261, 273, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); Holloway v. Arkansas, 435 U.S. 475, 485-90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Glasser v. United States, 315 U.S. 60, 72-75, 62 S.Ct. 457, 86 L.Ed. 680 (1942), or from counsel’s representation of a client whose interests are at odds with counsel’s own. See, e.g., United States v. Hurt, 543 F.2d 162, 166 (D.C.Cir.1976) (“To be sure, most *467 conflicts of interest arise out of a lawyer’s dual representation of co-defendants, but the constitutional principle is not narrowly confined to instances of that type.... Competition between the client’s interests and counsel’s own interests plainly threatens that result, and we have no doubt that the conflict corrupts the relationship when counsel’s duty to his client calls for a course of action which concern for himself suggests that he avoid.”). In particular, “[c]ourts have recognized actual conflicts of interest between an attorney and his client when pursuit of a client’s interests would lead to evidence of an attorney’s malpractice.” United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir.1994); see also United States v. Davis, 239 F.3d 283, 286-87 (2d Cir.2001) (finding actual conflict of interest created when the defendant argued in his pro se plea withdrawal motion that counsel coerced the defendant to plead guilty by threatening not to investigate his case); United States v. Sanchez-Barreto, 93 F.3d 17, 20-21 (1st Cir.1996) (finding an actual conflict of interest when the defendant’s pro se motion to withdraw plea alleged that counsel had coerced the defendant to plead guilty in order to conceal his unpreparedness for trial); Lopez v. Scully, 58 F.3d 38, 41 (2d Cir.1995) (finding an actual conflict of interest when the defendant’s pro se motion to withdraw a guilty plea was based on alleged attorney coercion); United States v. Ellison, 798 F.2d 1102, 1106 (7th Cir.1986) (same).
In the instant case, any representation that Hall may have provided Peters at the plea withdrawal hearing would have been adversely affected by an actual conflict of interest. A key part of Peters’ argument in support of his plea withdrawal motion was his allegation that his attorneys, Hall and Hardy, had provided him with inaccurate information when advising him to plead guilty. If true, such an allegation would at minimum show deficient performance by Hall and at worst demonstrate legal malpractice. Thus, Hall’s continued representation of Peters, who was presenting such arguments, would have created an actual conflict of interest. See Davis, 239 F.3d at 287 (noting that defendant’s allegations that his attorney had threatened not to investigate the case if defendant did not plead guilty “placed his attorney in the position of having to defend himself, and potentially to contradict [the defendant], in open court”).
Moreover, the record reflects that this actual conflict of interest did, in fact, adversely affect Hall’s performance as “counsel of record.” Prior to the plea withdrawal hearing, Hall informed Peters that he would “be unable to represent him in this motion.” J.A. at 180. Hall then followed through on this promised lack of representation by failing to consult with Peters about the motion and by remaining silent during the entire plea withdrawal hearing. In failing to act as counsel in any meaningful way at the plea withdrawal hearing, Hall clearly was affected by the actual conflict of interest. See Davis, 239 F.3d at 287 (finding that “[d]efense counsel’s silence at [the plea withdrawal motion) stage of the proceedings illustrates his actual conflict.”)
Accordingly, even if I were to accept the majority’s erroneous contention that Hall’s presence as counsel of record means that Peters was afforded the assistance of counsel during the plea withdrawal hearing, I would still find that Peters was denied effective assistance of counsel at this hearing because his only counsel of record was subject to an actual conflict of interest that adversely affected counsel’s performance. The Kentucky Supreme Court’s contrary determination on this point was not only an incorrect, but an unreasonable application of the Supreme Court’s conflict of interest jurisprudence. Thus, Peters, who *468 is being held in state custody in violation of his Sixth Amendment right to counsel, should be granted his requested writ of habeas corpus.
IV.
For the foregoing reasons, I respectfully dissent.