**UNITED STATES of America,
Appellee,**

v.

**Danny DAVIS, Defendant–Appellant.**

No. 99–1246.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 2000.

Decided Feb. 06, 2001.

284

Emily Berger, Assistant United States Attorney, (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Daniel R. Alonso, on the brief), Brooklyn, NY, for Appellee.

Robert L. Moore, Hempstead, NY, for Defendant–Appellant.

Before JOHN M. WALKER, Jr., Chief Judge, CALABRESI and KATZMANN, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge:

Defendant-appellant Danny Davis appeals from the April 28, 1999 judgment of the district court, Bernard J. Friedman, *District Judge*,[1] convicting him, following his guilty plea, of bribery of a local government employee in violation of 18 U.S.C. § 666(a)(2). Davis was sentenced to a term of 51 months' imprisonment, followed by three years' supervised release and a $100 special assessment.

Davis pleaded guilty on August 19, 1998, following last-minute negotiations with the government. At his plea allocution, Davis stated that he had received no threats or promises to induce him to plead guilty other than those placed on the record, and that he was satisfied with the representation of counsel. On October 14, 1998, nearly two months later but still prior to sentencing, Davis unsuccessfully moved *pro se* to withdraw his guilty plea on the grounds that his attorney had coerced him into pleading guilty. As the denial of this motion forms the basis for Davis's appeal, we will review the pertinent facts in some detail.

In his October 14th letter to the district court, moving to withdraw his plea, Davis described the circumstances surrounding his decision to plead guilty. He stated that his attorney had told him, "if you go to trial and you will be found guilty the Judge is going to revoke your bond and you will not be able to take care of your business.... [T]his is not about right and wrong[;] you have to take this plea or lose everything[;] you would like to keep your property don't you[;] don't fight the government this case has been decided already." Davis stated further that "some other events took place but when I have my hearing I will explain [sic] to the

---

1. United States District Judge for the Eastern

District of Michigan, sitting by designation.

court," and concluded "[W]hen I took the plea it was under duress from my lawyer."

On March 9, 1999, the district court held a hearing on the plea withdrawal motion at which Davis, defense counsel, and an Assistant United States Attorney appeared. At the hearing, Davis reiterated that he wanted to withdraw his plea, claiming that he had asked counsel to investigate his arrest but that counsel had told him, "I am not going to investigate into this case. I am not submitting any type of pretrial motions in this case. The only thing that I am interested in is you taking a plea." According to Davis, his counsel was "manipulating the court system. Utilizing the court system to get paid for something that he doesn't even do."

In response to Davis's allegation, the Assistant United States Attorney stated that defense counsel "provided in my experience the same or better level of counsel than most of my adversaries provide. He and I had many, many discussions in the weeks preceding trial geared toward trial—not geared to plea, geared toward what is this tape going to show, what is your defense going to be, what witnesses are you going to call."

The district court invited defense counsel to address the alleged coercion. Defense counsel answered that "I am always uncomfortable being in an adversarial position with my client. It is inappropriate and I prefer not to." The district court responded, "I agree. That is why I didn't ask you to speak before."

On appeal, Davis now argues that he was denied effective assistance of counsel at the plea withdrawal hearing because defense counsel was operating under an actual conflict of interest that adversely affected his performance.[2] We agree that Davis was entitled to the effective assistance of counsel at his plea withdrawal hearing, and that his counsel suffered from an actual conflict of interest. As we are unable to determine whether counsel's conduct was adversely affected as a result of the conflict, we remand for a further evidentiary hearing on the merits of the plea withdrawal motion.

## I.

█ We must first decide whether this case is properly before us on direct appeal or whether Davis's claim is better raised on collateral attack. "Generally, Courts of Appeals are reluctant to address ineffectiveness claims on direct review. The rationale for this policy is that the constitutional sufficiency of counsel's performance is usually unripe for seasoned retrospection until after the trial and whatever appeal may follow." *United States v. Salameh,* 152 F.3d 88, 160 (2d Cir.1998) (*per curiam*), *cert. denied sub nom. Abouhalima v. United States,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999). However, in this case, Davis is represented by new counsel on appeal and the bases for Davis's allegations of attorney misconduct are plain on the record. We therefore have discretion to consider the issue on direct appeal. *See United States v. Leone,* 215 F.3d 253, 256–57 (2d Cir.2000). We choose to exercise our discretion and address Davis's claim now.

█ Turning to the merits, it is well settled that a defendant's Sixth Amendment right to counsel attaches "at all critical stages in the proceedings 'after the initiation of formal charges.'" *United*

---

**2.** As a preliminary matter, following oral argument we remanded the case to the district court pursuant to *United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994) for a determination of whether defense counsel had effectively ceased to represent Davis at Davis's plea withdrawal hearing, such that Davis was representing himself. *See United States v. Davis,* 234 F.3d 1263, 2000 WL 1728072 (2d

Cir. Nov. 21, 2000) (unpublished table decision). After a hearing on January 1, 2001, the district court determined that Davis's attorney had not ceased to represent Davis, nor had he withdrawn, during the March 9, 1999 plea withdrawal hearing. We thus proceed to address Davis's claim that he was denied effective assistance of counsel at that hearing due to an actual conflict of interest.

States v. Gordon, 156 F.3d 376, 379 (2d Cir.1998) (quoting Moran v. Burbine, 475 U.S. 412, 431, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). It cannot be gainsaid that a defendant's guilty plea is the most critical stage of the proceeding as it forecloses his very right to a trial. Consequently, in the face of an allegedly involuntary plea, a plea withdrawal hearing is vital to ensuring the integrity of the process by which guilt may ultimately be determined. See United States v. Sanchez–Barreto, 93 F.3d 17, 20 (1st Cir.1996); United States v. Garrett, 90 F.3d 210, 212 (7th Cir.1996); United States v. Crowley, 529 F.2d 1066, 1069 (3d Cir. 1976). Given the occasionally complex standards governing plea withdrawals pursuant to Fed.R.Crim.P. 32(e), see, e.g., United States v. Gonzalez, 970 F.2d 1095, 1099–1101 (2d Cir.1992) (discussing former Fed.R.Crim .P. 32(d), subsequently renumbered Fed.R.Crim.P. 32(e)), it would be unreasonable to expect a criminal defendant to navigate this area of law without the competent advice of counsel.

The principal question presented in this case is whether Davis was denied the effective assistance of counsel at his plea withdrawal hearing. Under the familiar standard in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires the defendant to prove "both that counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice, in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. White, 174 F.3d 290, 294 (2d Cir.1999) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). However, where a defendant's ineffective assistance of counsel claim is based on an alleged conflict of interest, "a defendant is entitled to a presumption of prejudice if he can demonstrate that his attorney labored under an actual conflict of interest and that the 'actual conflict of interest adversely affected

his lawyer's performance.'" Id. at 295 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

Davis argues persuasively that his counsel was operating under an actual conflict of interest at the plea withdrawal hearing. The question is a familiar one. Recently in Lopez v. Scully, 58 F.3d 38, 41 (2d Cir.1995), we reviewed the denial of a defendant's motion to withdraw his plea on the grounds that his attorney had coerced him into pleading guilty. Following defendant's pro se allegation of coercion, we held that "[a]t that point, the attorney had an actual conflict of interest: to argue in favor of his client's motion would require admitting serious ethical violations and possibly subject him to liability for malpractice; on the other hand, any contention by counsel that defendant's allegations were not true would contradict his client." Id. (internal quotation marks and alterations omitted). The actual conflict in such a case is plain.

As we have subsequently clarified, however, not every disagreement with defense counsel amounts to a conflict of interest. See White, 174 F.3d at 296. "[I]t is to be expected that counsel will often be placed in the difficult position of having to comment on an asserted disagreement with her client, if only to inform the court as to whether she believes that she can continue the representation." Id. Consistent with the limitation recognized in White, Lopez should not be read as holding that the mere accusation of coercion, without more, is sufficient to create a conflict of interest. See United States v. Moree, 220 F.3d 65, 71 (2d Cir.2000). In Lopez, a conflict arose when defense counsel was placed in the position of having to contradict his client in order to protect himself from allegations of malpractice and potential liability. On the other hand, and as is frequently the case, if a defendant's allegations describe only competent counsel's candid advice about the risks of going to trial, counsel will not be placed in an

actual conflict between advocating for his client's interests and his own. In *Moree*, we held that no actual conflict existed where the defendant had not at sentencing accused his attorney of coercing him to plead guilty, and thus did not put his attorney in the position of having to defend himself. In addition, in *Moree*, the defendant had not applied to revoke his plea, and thus even if he and his attorney had contradicted each other, such contradictions would not have hindered an application for relief. *See id.* at 71–72.

■ The present case is close to the line. Many of Davis's allegations of coercion do not suffice to create an actual conflict. For example, defense counsel's perhaps honest assessment that Davis would be found guilty if he went to trial, and that failing to take the plea would result in Davis "losing everything," might constitute nothing more than competent advice. However, Davis also makes particularized allegations that counsel had threatened not to investigate his case and not to file pre-trial motions if Davis did not accept the plea. These allegations are sufficient to create an actual conflict of interest. Here, as in *Lopez*, and in contrast to *Moree*, the defendant made a claim of coercion during his plea withdrawal hearing. Thus, his accusation placed his attorney in the position of having to defend himself, and potentially to contradict Davis, in open court. Defense counsel took the prudent course of declining to respond to Davis's allegations of coercion while acknowledging that the plea withdrawal motion placed him in an adversarial relationship with his client. Counsel's statements at the hearing did not directly contradict Davis, but neither did they support him. Defense counsel's silence at this stage of the proceedings illustrates his actual conflict.

The government argues that counsel's performance was not adversely affected by a conflict of interest, regardless of the actual conflict, and that prejudice should therefore not be presumed under *Cuyler*.

The government finds superficial support in *Lopez*, which held that counsel was under no obligation to advocate the defendant's plea withdrawal motion in that case as it was not a "plausible alternative defense strategy." *Lopez*, 58 F.3d at 42 (internal quotation marks omitted). As counsel's performance was not adversely affected by the conflict of interest, no presumption of prejudice was found based on the plea withdrawal motion.

The government argues that *Lopez* is controlling and urges us to reach a similar result in this case. We decline to do so on the present record. *Lopez* was decided on a habeas petition, pursuant to 28 U.S.C. § 2254, following defendant-petitioner Lopez's state-court conviction. The claim of coercion "was considered and rejected by the district court after a full evidentiary hearing in which Lopez was represented by new counsel," and in which Lopez's trial counsel testified. *Id.* at 43. In other words, Lopez was ultimately afforded an evidentiary hearing, with the assistance of conflict-free counsel, on the merits of the voluntariness of his original plea. It is precisely this sort of hearing that Davis requests here.

■ Allegations of coerced pleas are particularly serious given the definitively harmful consequences to a defendant of an involuntary guilty plea. A defendant who is coerced into pleading guilty loses the right to put the government to its proof or perhaps even to establish his innocence. Accordingly, in the face of a motion to withdraw a plea based on counsel's misconduct, district courts must determine whether the facts as alleged support a finding of a conflict. If they do not, there is no problem. If they do, the defendant may still waive his right to conflict-free counsel or his right to counsel altogether and proceed *pro se;* otherwise, the district court must provide the defendant with the effective assistance of conflict-free counsel for purposes of the plea withdrawal. Our frequent review of district courts' actions in this circuit confirms that the appoint-

ment of new counsel in such situations is the usual practice. *See United States v. Ramos,* 182 F.3d 902 (2d Cir.1999) (table); *United States v. Morrison,* 153 F.3d 34, 39 (2d Cir.1998); *United States v. Fashewe,* 152 F.3d 921 (2d Cir.1998) (table); *United States v. Torres,* 129 F.3d 710, 713 (2d Cir.1997) ("[Defendant] alleged that his lawyer forced him to plead guilty.... The court reluctantly discharged [defense counsel] and appointed new counsel, [defendant's] third attorney."); *United States v. Ramos,* 107 F.3d 5 (2d Cir.1997) (table); *United States v. Rivas,* 99 F.3d 401 (2d Cir.1995). In this case, Davis did not provide a knowing and voluntary waiver of his right to conflict-free counsel for purposes of the plea withdrawal hearing and the district court did not appoint new counsel to represent him at the hearing. We therefore remand to the district court to conduct an evidentiary hearing to determine whether trial counsel's performance was adversely affected by the actual conflict of interest, and thus, whether he is entitled to a presumption of prejudice under *Cuyler. See Sanchez–Barreto,* 93 F.3d at 22 (providing a similar remedy). In this case, the district court must determine whether defense counsel should have advocated for Davis's plea withdrawal motion. Because this inquiry necessarily implicates the merits of the plea withdrawal motion, the district court is instructed to ensure that Davis is represented by conflict-free counsel at the hearing.

By this opinion, we do not mean to confer an automatic right to substitute counsel whenever a defendant utters the word "coercion" in connection with his guilty plea. If, after the plea withdrawal hearing, the trial court determines that the defendant's plea was not coerced, we see no reason why the original defense counsel may not generally resume representation since the actual conflict has been extinguished.

## II.

■ Davis also argued in his brief that his waiver of counsel at sentencing, at which he proceeded *pro se,* was improperly taken by the district court. Following oral argument, appellate counsel appears to have adopted the prudent course of not challenging Davis's favorable sentence. Regardless, we have examined this claim and find it to be without merit.

Davis submitted voluminous documents to the district court throughout the course of his trial, many evincing an uncommon legal acuity. While the colloquy at sentencing concerning Davis's decision to proceed *pro se* could have been more thorough, "[w]e need not analyze the district court's every word, so long as the record as a whole demonstrates that the defendant knowingly and intelligently waived her right to counsel." *Torres v. United States,* 140 F.3d 392, 401 (2d Cir.1998). We have no doubt that Davis's waiver of his right to counsel at sentencing was both knowing and voluntary. If, following the evidentiary hearing required herein, Davis's plea is upheld, the sentence of the district court is affirmed.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand to the district court to conduct an evidentiary hearing concerning whether defense counsel's performance was adversely affected by an actual conflict of interest, and thus whether Davis is entitled to a presumption of prejudice. If the district court upholds Davis's guilty plea, the sentence imposed by the district court is affirmed.