# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 17, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000469-MR
AND
2014-SC-000534-MR



KIRBY BRYAN RUANO                                      APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.          HONORABLE ERNESTO SCORSONE, JUDGE
NO. 12-CR-01233

COMMONWEALTH OF KENTUCKY                               APPELLEE

## MEMORANDUM OPINION OF THE COURT

## VACATING AND REMANDING

The trial court accepted Kirby Bryan Ruano's guilty plea; but Ruano filed

a motion with to withdraw that guilty plea before sentencing. After questioning

Ruano and his counsel, the trial court denied Ruano's motion and sentenced

him in accordance with the plea agreement to thirty years' imprisonment for

murder and ten years' imprisonment for robbery, to run concurrently, for a

total sentence of thirty years.

Ruano now appeals as a matter of right[1] the trial court's summary

denial of his motion to withdraw his guilty plea after a discussion on the record

with Ruano and his counsel. We conclude that the trial court's informal

---

[1] Ky.Const. § 110(2)(b).

disposition of Ruano's motion to withdraw his guilty plea compromised his right to conflict-free counsel. So we vacate the judgment and the order denying Ruano's motion to withdraw his guilty plea and remand the matter to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Ruano and two others were indicted on charges of murder and robbery. The indictment contained a capital-offense classification and alleged the crime was committed with aggravating circumstances. The Commonwealth did not file its notice of aggravators for more than a year after the return of the indictment.

After the Commonwealth filed its notice of aggravators, Ruano moved to exclude aggravated penalties, arguing that if the Commonwealth intended to seek them, it should have given notice much sooner. Until the Commonwealth's notice of aggravated penalties, Ruano's counsel had been preparing for trial as if the case were non-capital. But before the scheduled hearing on Ruano's motion to exclude the aggravated penalties, Ruano reached a plea agreement with the Commonwealth. So the trial court conducted a proper plea colloquy with Ruano and accepted his guilty plea. The trial court delayed sentencing while one of Ruano's co-defendants stood trial. Ruano moved the court to withdraw his plea before a sentencing hearing could be held.

The trial court questioned Ruano and counsel about the grounds for Ruano's motion before denying it. The trial court then sentenced Ruano

2

according to the terms of his plea agreement and entered judgment accordingly.

## II. ANALYSIS.

Kentucky Rules of Criminal Procedure (RCr) 8.10 provides that "any time before judgment the court *may* permit the plea of guilty or guilty but mentally ill[] to be withdrawn and a plea of not guilty substituted."[2] As the rule indicates, the decision on the motion to withdraw a guilty plea is committed to the sound discretion of the trial court. That is true with a single exception: if a defendant alleges his plea was "entered involuntarily[, he] is entitled to a hearing on the motion."[3] And if the trial court then finds a defendant involuntarily entered his guilty plea, that defendant's RCr 8.10 motion must be granted.[4] We review a trial court's decisions on such motions for an abuse of discretion. The trial court's determination of whether the defendant voluntarily entered the plea, though, is reviewed for clear error, *i.e.*, "whether the determination was supported by substantial evidence."[5]

Ruano's challenge to the trial court's denial of his withdrawal motion is effectively two-pronged: (1) the trial court erroneously denied his withdrawal motion without holding an evidentiary hearing; or, in the alternative, (2) the process followed by the trial court to decide the motion effectively denied him the right to counsel afforded by the Sixth Amendment to the United States

---

[2] Emphasis added.

[3] *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007).

[4] *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006).

[5] *Id.* at 566 (citing *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10-11 (Ky. 2002)).

Constitution and Eleventh Amendment to the Kentucky Constitution. And if his rights were violated, Ruano contends we should remand the case for an evidentiary hearing with conflict-free counsel.

In fact, the trial court did conduct a hearing during which Ruano and his counsel were questioned about Ruano's RCr 8.10 motion. However, neither Ruano nor his counsel was placed under oath. Ruano told the trial court that just before he was offered the plea deal his girlfriend heard that "people would handle him" if he returned to the streets. Ruano said he took this as a threat and grew concerned about the safety of his family if he were out of prison with them. Also, Ruano told the trial court he was given less than twenty-four hours to review the terms of the plea deal—a length of time in retrospect Ruano felt was unfair. Finally, Ruano said he was pressured by the Commonwealth's late notice of its intent to seek the death penalty.

The trial court responded by reminding Ruano of the extensive colloquy they had when Ruano entered his guilty plea. According to the trial court, at no point during that guilty-plea colloquy did Ruano indicate that the guilty plea was contrary to his wishes or otherwise involuntary. Ruano indicated he understood the terms of the guilty plea and the ramifications of his acceptance. The trial court asked Ruano if he had answered truthfully all the questions during his guilty-plea colloquy. Ruano's first response was that he had not been truthful during his guilty-plea colloquy; but after the trial court allowed him time to consult with counsel, Ruano changed his response to say that he had been truthful during the guilty-plea colloquy.

4

The trial court is free to deny a motion under RCr 8.10 without an evidentiary hearing, "if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true."[6] After all, "[s]olemn declarations in open court carry a strong presumption of verity. The presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[7] But trial courts must be cautious in taking this tack because "the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken,"[8] *i.e.* the validity of a guilty plea is not determined from "specific key words uttered at the time [it] was taken, but from considering the totality of the circumstances surrounding the plea."[9]

In summary, if a defendant fails to present any specific allegations pertaining to the involuntariness of his plea, it is not then error for the trial court to rely solely on the record and summarily deny the defendant's motion to withdraw a guilty plea.[10] Of course, we do not go so far as to say a trial

---

[6] *United States v. Harris-Thompson*, 751 F.3d 590, 603 (8th Cir. 2014).

[7] *Edmonds*, 189 S.W.3d at 569 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

[8] *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001).

[9] *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky.App. 1990).

[10] It is important to note that the basis for Ruano's withdrawal motion, in so many words, was that his plea was involuntary. If a plea was entered involuntarily, the trial court *must* grant the motion to withdraw. *See Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002). Discerning whether or not a plea was entered involuntarily mandates "[e]valuating the totality of the circumstances surrounding the guilty plea [which] is an inherently factual inquiry." *Commonwealth v. Tigue*, 459 S.W.3d 372, 387 (Ky. 2015) (quoting *Bronk*, 58 S.W.3d at 487 (alterations in

5

court may always simply rely on its *Boykin* colloquy when faced with a motion to withdraw a guilty plea; but we do say that a defendant must present a colorable argument before a trial court is *required* to hold an evidentiary hearing on the motion to withdraw a guilty plea. Perhaps Ruano's allegations were facially insufficient,[11] but that determination is irrelevant now because the trial court ruled on Ruano's motion in a summary fashion but undertook an informal inquiry of Ruano and his counsel regarding the merits and facts of his claim. Ostensibly, the trial court did not feel Ruano's claims warranted an evidentiary hearing but did have Ruano and his counsel provide the factual background concerning Ruano's claims.

We find this approach problematic. Ruano asserts that his Sixth and Fourteenth Amendment rights were abridged because he was not provided conflict-free counsel at the trial court's inquiry into the merits of his withdrawal motion. Ruano was not provided new counsel for his plea withdrawal hearing. The same attorney who negotiated the plea with the

original)). Generally speaking then, a defendant is entitled to an evidentiary hearing when he makes allegations that he involuntarily agreed to the guilty plea. Ruano makes such allegations here, just in a highly conclusory and vague manner.

[11] Ruano's contentions, even if true, do appear facially weak. Ruano may have had twenty-four hours to review the terms of the plea agreement, but plea negotiations and discussions between the Commonwealth and Ruano's counsel had been underway for weeks. The Commonwealth's plea offer did not blindside Ruano. The same analysis applies to the Commonwealth's late announcement that it would seek the death penalty. Ruano was indicted for a capital offense. So the death penalty was always looming, any promises or indications expressed or implied by the Commonwealth notwithstanding. As for Ruano's allegations of threats to his family, these do not constitute the type of coercion imagined when discussing the voluntariness of a guilty plea. The federal Constitution as well as our own Constitution protect citizens from governmental coercion, manipulation, or oppression. Even if Ruano's girlfriend received threats, it would say nothing about the government's alleged role in coercing Ruano to enter a guilty plea.

6

Commonwealth also represented him at the hearing. According to Ruano, then, his counsel was given the impossible role of both defending him while serving as a witness on behalf of the guilty plea that she herself negotiated. In fact, at the beginning of the trial court's inquiry, Ruano's counsel made the trial court aware that Ruano's decision to withdraw his plea was against her advice. This alleged error is not preserved for our review, so Ruano requests palpable-error review.[12]

We recently undertook an exhaustive review of a defendant's right to counsel during proceedings to withdraw a guilty plea.[13] We will not repeat that here; but we should stress that a proceeding to withdraw a guilty plea "is vital to ensur[e] the integrity of the process by which guilt may ultimately be determined"[14] and, perhaps as a result, constitutes a "critical stage[] of the criminal proceeding,"[15] entitling a defendant to counsel. Ruano was accompanied by counsel at the instant hearing, but he alleges the circumstances were so inherently prejudicial that his constitutional right to counsel was violated per se. As we acknowledged in *Tigue*, the Supreme Court has identified particular circumstances "where although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully

---

[12] *See* RCr 10.26. A violation of constitutional rights is almost always considered a palpable error, unless, of course, the error is harmless beyond a reasonable doubt—a much higher standard than our typical harmless-error review. *See Chapman v. California*, 366 U.S. 18, 24 (1967).

[13] *See Tigue*, 459 S.W.3d at 372.

[14] *Id.* at 384 (quoting *United States v. Davis*, 239 F.3d 283, 286 (2d Cir. 2001)).

[15] *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227-28 (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)).

7

competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[16] The two situations are a complete denial of counsel at a critical stage and when counsel is afflicted by an actual conflict of interest. Of these, Ruano, of course, does not argue he was denied counsel completely but that his counsel was "burdened by an actual conflict of interest."[17]

The facts here present a close call. Some of Ruano's allegations do not concern his counsel's behavior. Like Tigue, Ruano was represented at the hearing by his trial counsel. Ruano's counsel was confronted with arguing Ruano experienced coercion while simultaneously arguing Ruano's plea was voluntary. Counsel was not responsible for the Commonwealth's seeking the death penalty late in the case or the threats Ruano's girlfriend received. The only aspect in which counsel may have been involved would be the alleged compressed timeline for accepting the Commonwealth's plea offer. But Ruano does not suggest his counsel was responsible for the compressed timeline.

Ruano also argues that his counsel argued against him and did not effectively investigate or present his claims of coercion. Counsel did inform the trial court that Ruano's withdrawal motion was against her advice but that, in and of itself, is not indicative of an actual conflict. Attorneys may disagree with their clients while remaining capable of proceeding in a diligent manner.

---

[16] *Tigue*, 459 S.W.3d at 384-85 (internal quotation marks omitted) (quoting *United States v. Cronic*, 466 U.S. 648, 659-60 (1984)).

[17] *Smith v. Robbins*, 528 U.S. 259, 287 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

Additionally, Ruano highlights a particular portion of the informal hearing as indicative of his counsel's conflict and opposition to his withdrawal motion. Counsel conferred with Ruano after Ruano informed the trial judge he gave false statements during his plea colloquy. Following the conference, Ruano recanted that assertion and reiterated his previous statements were true. Ruano presents this situation as proof that counsel acted against his interests to benefit hers, *i.e.*, she was interested in preserving the plea she had negotiated. Of course, counsel may have been more concerned with Ruano committing perjury than preserving the plea deal; but Ruano's counsel's position contrary to his interests and wishes is troublesome.

Perhaps Ruano is correct in arguing that different counsel would have investigated his allegations further and asserted them more clearly—that is exactly the point. We cannot endorse the trial court's approach to resolving Ruano's withdrawal motion. Ruano effectively testified about his allegations and then his counsel effectively testified about her experience during the plea negotiations. To say the trial court's discussion on the record was not palpable error would be to overlook our unbroken refrain that an attorney should not testify at trial. In *Tigue*, we discussed an attorney simply being silent at a withdrawal hearing and the harmful impact that would have on a defendant's right to counsel. In addition, we noted an attorney's advocacy contrary to the defendant's creates an actual conflict. This case may not present as clean an example of an actual conflict, but a conflict exists nonetheless. We are unable to conclude that Ruano's right to counsel was honored. And we cannot

9

approve of the trial court's choice to resolve possible issues of fact so informally. So we are constrained to conclude that Ruano suffered a manifest injustice.[18]

As we outlined in *Tigue*, the proper remedy is to vacate Ruano's judgment of conviction and "rewind this matter to the point in time when [Ruano] had already entered his plea but before he was sentenced."[19] Ruano, of course, may seek again to withdraw his guilty plea. If so, and if the trial judge holds a hearing, Ruano is entitled to new counsel.

## III. CONCLUSION.

For the foregoing reasons, we vacate the judgment and the order denying Ruano's motion to withdraw his guilty plea. The case is remanded to the circuit court for further proceedings consistent with this opinion.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, Venters, JJ., sitting. All concur. Wright, J., not sitting.

---

[18] *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013).
[19] *Tigue*, 459 S.W.3d at 390.

10

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

Andrea Leigh Mattingly
Assistant Commonwealth's Attorney
Office of the Fayette Commonwealth's Attorney