RENDERED:  MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1032-MR

DEMARKUS TRAMBER                                                 APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A.C. MCKAY CHAUVIN, JUDGE
ACTION NO. 15-CR-001328-5

COMMONWEALTH OF KENTUCKY                             APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  DIXON, KRAMER, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  In this post-conviction appeal, Demarkus Tramber, proceeding *pro se*, seeks review of the Jefferson Circuit Court's order denying his motion to vacate, set aside, or correct his sentence pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42.  Following a jury trial, he had been convicted of murder, first-degree assault, and four counts of first-degree wanton endangerment,

and he entered into a sentencing agreement of twenty years' imprisonment, which included a waiver of his right to appeal his conviction. We vacate and remand.

We shall rely upon the recitation of the facts as set forth in the opinion of the Supreme Court of Kentucky in the direct appeal of one of Tramber's co-defendants, William McLemore:

> On August 27, 2014, Destin "Blair" Lindsay was shot on Saint Louis Avenue. McLemore later told Sergeant Scott Beatty of the Louisville Metro Police that he had been "up the street" on Saint Louis at the time of the shooting. According to Michael Dunn, an acquaintance of Lindsay and McLemore, an ongoing "beef" between Saint Louis and Market Street led to Lindsay's shooting.

> There are many varying accounts of the events which took place after Lindsay's shooting. Dunn said he met up with McLemore and three other men at the park on Saint Louis and the five men decided to retaliate for Lindsay's shooting. He said McLemore and two of the other men said they knew who had shot Lindsay. Dunn said they walked to 37th Street and approached a house and the other four opened fire. According to Dunn, he pulled the trigger on his own gun several times, but it did not fire.

> Trey Anderson, one of the other men Dunn said he met up with in the park, provided a different version of events. According to Anderson, when he arrived at the Saint Louis Park after Lindsay had been shot, Dunn was already there. He said he did not see either McLemore or Demarkus Tramber (one of the other men identified by Dunn). Anderson said he drove down 37th Street with Dunn and Duwan Mason (another of the men identified by Dunn) and parked. A second car parked behind him. Anderson said he remained with the vehicles while the

-2-

others got out.  According to Anderson, he did not know the identity of the individuals in the other car.  Dunn and Mason returned to Anderson's car shortly after he heard gunshots.  Anderson said he knew McLemore, but he did not name him as one of the individuals involved in the shooting.

According to Cierra Twyman, she was sitting on the porch with her boyfriend, the couple's daughter, Ne'Riah, and her boyfriend's brothers when she saw a group of men approach.  She heard them talking to one another and then heard gunshots.  Twyman was shot, as was her sixteen-month-old daughter, Ne'Riah.  Ne'Riah did not survive the gunshot wound to the torso she sustained.

Damion Thompson, Twyman's cousin, testified he saw McLemore, Anderson, and a third man get out of a car on the comer of Market Street and 37th Street.  He indicated that McLemore told him he was "ready to go handle something and shoot back out."  Thompson heard gunshots around thirty seconds later.  Thompson identified McLemore and Anderson by photograph and then later identified McLemore in court, though he said he did not personally know the two, but had seen them a few times in the past.

On September 6 Cedric Weaver was cited for trafficking.  During his discussion with police, Weaver said he had seen the shooting that led to Ne'Riah Miller's death on August 27.  He said that on the day of Ne'Riah's shooting, he had been sitting on a porch with Dujuan "Budda" Simonton.  He said he saw a group of people walk down Market Street and ask people if they were "from Market."  When someone responded in the affirmative, the men pulled out their guns and started shooting.  According to Weaver, he saw both McLemore and Tramber shooting at people "a couple houses down from Na'Rhiah's home."  Weaver claimed Simonton was in the house when the shots were fired.

-3-

Simonton would later deny any recollection of where he was on the day of the shooting, and deny seeing Weaver on that day.

On September 11, 2014, McLemore was jointly indicted with Tramber for one count of murder, one count of first-degree assault, ten counts of attempted murder, and nine counts of first-degree wanton endangerment. Both McLemore and Tramber were then jointly re-indicted for the same offenses along with Anderson, Dunn, and Mason in a superseding indictment.

Anderson and Dunn both entered plea agreements with the Commonwealth that required them to "testify truthfully in any proceeding related to his co-defendants." McLemore, Mason, and Tramber all proceeded to trial and all three were convicted of murder, first-degree assault, and four counts of first-degree wanton endangerment. Tramber waived his right to directly appeal and was sentenced separately. McLemore and Mason were each sentenced to thirty-five years' imprisonment. This case involves McLemore's appeal from those convictions.

*McLemore v. Commonwealth*, 590 S.W.3d 229, 232-33 (Ky. 2019). We note that

McLemore's and Mason's thirty-five-year sentences were affirmed by the Supreme

Court on direct appeal. *Id*. at 245; *Mason v. Commonwealth*, No. 2018-SC-0044-

MR, 2020 WL 1290429 at *10 (Ky. Feb. 20, 2020).

On June 17, 2019, Tramber filed a *pro se* motion to vacate his

sentence and be released from custody pursuant to RCr 11.42, citing ineffective

assistance of counsel. In his motion, Tramber raised the following grounds and

sought relief as requested in the parentheticals at the end of each item:

-4-

1) His trial counsel did not move the court to withdraw the sentencing agreement, against his request (requested appointment of counsel and an evidentiary hearing as his conversation with his attorney could not be refuted by the record; a new trial; and release from custody);

2) He was denied his right to appeal his conviction when his counsel refused to file a notice of appeal to challenge the validity of the sentencing agreement (requested an appeal "other than a direct appeal of his conviction" and appointment of counsel);

3) His counsel was ineffective in failing to object to the prosecutor's comments on the credibility of two witnesses, Michael Dunn and Trey Anderson (requested reversal of conviction and sentence; a new trial; release from custody; or for appointment of counsel and an evidentiary hearing);

4) His counsel was ineffective in requesting a curative instruction, rather than moving for a mistrial, when the trial court informed the jury that Tramber had been in custody when a witness had been shot (requested a new trial or an evidentiary hearing and appointment of counsel);

5) His counsel was ineffective in failing to impeach a witness with prior testimony (no requests); and

6) His counsel was ineffective in failing to object to the prosecutor's attempt to define reasonable doubt during opening statements (requested a new trial but no evidentiary hearing because he stated the record supported his allegation).

By order entered June 21, 2019, the circuit court denied Tramber's motion, finding that his arguments lacked a factual basis or legal merit: Tramber failed to show that his attorney's representation fell below an objective level of reasonableness in violation of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); the grounds could or should have been raised on direct appeal; or the grounds did not come within the purview of RCr 11.42. In addition, the court denied Tramber's motions for appointment of counsel and for an evidentiary hearing. This appeal now follows.

This Court's standard of review in an RCr 11.42 post-conviction action is well-settled in the Commonwealth. To establish a claim for ineffective assistance of counsel, a movant must meet the requirements of a two-prong test by proving that: 1) counsel's performance was deficient, and 2) the deficient performance prejudiced the defense. *Strickland*, *supra*; *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985), *cert. denied*, 478 U.S. 1010, 106 S. Ct. 3311, 92 L. Ed. 2d 724 (1986). Pursuant to *Strickland*, the standard for attorney performance is reasonable, effective assistance. The movant bears the burden of proof and must show that his counsel's representation fell below an objective

standard of reasonableness.  In doing so, the movant must overcome a strong presumption that counsel's performance was adequate.  *Jordan v. Commonwealth*, 445 S.W.2d 878, 879 (Ky. 1969); *McKinney v. Commonwealth*, 445 S.W.2d 874, 878 (Ky. 1969).  Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.  If an evidentiary hearing is held, the reviewing court must determine whether the lower court acted erroneously in finding that the defendant below received effective assistance of counsel.  *Ivey v. Commonwealth*, 655 S.W.2d 506, 509 (Ky. App. 1983).  *See also Haight v. Commonwealth*, 41 S.W.3d 436, 441-42 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

The first issue we shall address is Tramber's allegation that his trial counsel failed to file a motion to withdraw the sentencing agreement, depriving him of representation related to the penalty phase.  At the conclusion of the guilt phase of the trial, Tramber decided to accept the Commonwealth's offer of a twenty-year sentence and forego sentencing by a jury in exchange for the waiver of

his right to appeal his conviction.[1]  The court conducted a colloquy that day, noting that based upon the jury's verdict, Tramber was facing a best case scenario of twenty years' imprisonment and a worst case scenario of life imprisonment.  The court accepted Tramber's decision to agree to the offer and sentenced him to twenty years' imprisonment.

Tramber claims in his RCr 11.42 motion and in his appellate brief that his decision to accept the Commonwealth's offer was based upon what his trial counsel told him would happen if he refused the deal.  Tramber's version of what took place, as set forth in his RCr 11.42 motion, is as follows:

> Prior to sentencing, Tramber's attorney came to the holding area to see him.  He informed Tramber that the Commonwealth was offering him a deal in lieu of jury sentencing.  Tramber refused because he did not want to give up his right to appeal his case.  His attorney told him that he would not represent him at sentencing and that he was fortunate that he even finished the trial, due to his family not paying all the money he was owed.
>
> [Tramber's attorney] hold him "look, take the deal and I will forgive the debt.  I will also represent you at sentencing, free of charge.  That will be less stress on your mom[.]"  Tramber, who was concerned about his mom's health and stress level about the money, took the deal on those terms.  He was told not to mention this to the judge and to just answer the questions.

---

[1] Neither the sentencing agreement nor the final judgment is included in the record on appeal.  The certified record in this case begins with a December 19, 2017, order denying Tramber's motion for Kentucky Rules of Civil Procedure (CR) 60.02 relief.  There is a note at the beginning of the record that the rest of the case was at the Supreme Court with a co-defendant's appeal.  Based upon our review of the colloquy, the agreement specifically included a waiver of Tramber's right to directly appeal his conviction.

The colloquy was conducted between the court and Tramber and his deal was accepted. Counsel tried to get Tramber to waive final sentencing, on the record, even though he told him he would represent him at that proceeding. Tramber refused.

Prior to that date, Tramber learned that he could withdraw from that agreement and wished to have his direct appeal, as he changed his mind after hearing from a legal aide in the jail, the significance of his appeal and what the Court could do, should they find an error.

He informed his attorney of his wishes and counsel reminded him of the deal "they" entered and why he forgave the debt. He also reminded him of what the judge said and that there was nothing he could do, there was NO appeal of any kind. That was the conclusion of the proceedings and one of the last times he [saw] his attorney.

Later in the motion, Tramber continued:

Prior to final sentencing on April 25, 2017,[2] Tramber had decided that he no longer wanted to accept the Commonwealth's offer and he now wanted to pursue regular sentencing.

He contacted his attorney and relayed his wishes, that *he wanted to withdraw his sentencing agreement*. Although he [saw] his Co-defendants get more time than he did with the agreement, he realized the impact of what he had done and what he really gave up, by entering into the "Sentencing Agreement." Tramber had it explained to him, the impact of waiving his right to appeal, by a resident Legal [Aide] located in the jail.

---

[2] The final sentencing hearing was held on April 28, 2017.

Tramber's attorney told him "No matter what you want at this point, [there's] nothing we can do. Besides, I told you that your family still had not paid the other $5000 Dollars [sic] owed and my kindness had already extended far enough." "Also, you & I had an agreement that if you took the deal I would waive the money owed and represent you at final sentencing, remember?"

Tramber instructed his attorney that he still wanted to withdraw the "Sentencing Agreement" despite the "understanding/deal["] that they had made. Counsel simply stated that "look, Tramber, we'll see, how about that?["] Tramber did not hear from his attorney again until April 27, 2017 which was one day before Court. His attorney instructed him that if he mentioned this "Withdraw crap" the judge had informed him he would not oblige the "Sentencing Agreement" and would give him 30 years. Tramber, still concerned about his appeal asked "So? Will I get my appeal back?" Counsel told him that he would not get it back and that they were all "lost, pursuant to the agreement." Tramber contends that was the reason he did not mention it during his final sentencing on April 28, 2017.

Based upon these allegations, Tramber contends that he was denied counsel at a critical stage of the proceedings when his attorney refused to file a motion to withdraw the sentencing agreement. He reminds the Court that it was not the merits of the motion to withdraw for which he was seeking relief, but rather from counsel's failure to file the motion at all.

In support of his argument, Tramber cites to the Supreme Court of Kentucky's opinion in *Commonwealth v. Tigue*, 459 S.W.3d 372 (Ky. 2015). In this case, Tigue had entered into a pre-trial guilty plea agreement with the

Commonwealth, after which he expressed to his appointed counsel and the court that he wished to withdraw his plea and proceed to trial. Tigue's counsel did not file a motion to withdraw his plea pursuant to his request, and the court declined to rule on Tigue's *pro se* oral request at the sentencing hearing as a motion had not been filed. Tigue sought RCr 11.42 relief. The court appointed counsel, who filed a supplemental memorandum, and held an evidentiary hearing, after which the court denied relief. On appeal, this Court reversed the lower court's decision on this issue, and the Supreme Court affirmed this decision on discretionary review, as we explain below.

In its analysis, the Supreme Court recognized that "both sentencing and guilty-plea proceedings are critical stages during which the right to counsel attaches[,]" *id*. at 384, before concluding that "a motion to withdraw a guilty plea made before entry of the final judgment of conviction and sentence is a 'critical stage' of the criminal proceedings to which the right to counsel attaches." *Id*.

The Supreme Court went on to review whether Tigue's trial counsel had been ineffective in failing to file a motion to withdraw his plea. It explained:

> Just as the decision whether to enter a guilty plea is personal to the defendant, so too is the decision whether to ask to withdraw such a plea. *See United States v. Davis*, 239 F.3d 283, 286 (2d Cir. 2001) ("It cannot be gainsaid that a defendant's guilty plea is the most critical stage of the proceeding as it forecloses his very right to a trial. Consequently, in the face of an allegedly involuntary plea, a plea withdrawal hearing is vital to

ensuring the integrity of the process by which guilt may ultimately be determined."). Implicit in the requirement that counsel defer to the defendant's decision to enter the plea is "the requirement that counsel abide by a client's determination, after a plea of guilty has been entered, to seek its withdrawal." *State v. Barlow*, 419 N.J.Super. 527, 17 A.3d 843, 848 (App. Div. 2011). The decision to seek to withdraw a guilty plea is not merely trial strategy, and cannot be made by counsel. If a defendant has entered a guilty plea and, before entry of final judgment, desires to seek to withdraw that plea, whether because it was allegedly entered in error, under duress, or other reason, he is entitled to the assistance of counsel in making such a request. *See Davis*, 239 F.3d at 286 ("Given the occasionally complex standards governing plea withdrawals . . . , it would be unreasonable to expect a criminal defendant to navigate this area of law without the competent advice of counsel." (citation omitted)).

*Id.* at 386. Applying the rule to the facts of that case, the Supreme Court held that Tigue had been completely denied assistance of counsel, despite his counsel's presence at the sentencing hearing:

> Immediately after entering the guilty plea, Tigue sought his trial counsel's assistance to withdraw the plea, but his attempts to contact counsel during the three weeks between the plea and sentencing hearing went unanswered. And the video of the sentencing hearing demonstrates that Lundy merely stood to the side during the plea withdrawal discussion and did not speak a word in Tigue's favor or otherwise offer his counsel or assistance. To stand silent and refuse to act on a decision that is personal to the defendant is no different than not being present at all. It is a complete denial of counsel.

*Id.*

We hold that the foregoing law applies in situations like Tramber's, where he entered into a pre-judgment sentencing agreement with the Commonwealth that included the waiver of his right to appeal his conviction.

In its brief, the Commonwealth merely argues that Tramber had not alleged any procedural or constitutional missteps and that he had not brought this claim before the trial court. It also stated, incorrectly, that Tramber had not requested an evidentiary hearing.

In his RCr 11.42 motion, Tramber specifically requested the appointment of counsel and an evidentiary hearing as to this ground for relief. RCr 11.42(5) only requires a hearing "[i]f the answer raises a material issue of fact that cannot be determined on the face of the record[.]" And in *Bowling v. Commonwealth*, 981 S.W.2d 545, 549 (Ky. 1998), the Supreme Court stated, "[i]f the record refutes the claims of error, there is no need for an evidentiary hearing. A hearing is also unnecessary where the allegations, even if true, would not be sufficient to invalidate the conviction." (Citations omitted.) Here, we hold that the allegations raised in this ground, while self-serving, cannot be refuted by the record and that the trial court should have appointed counsel and held an evidentiary hearing to properly review this allegation. Therefore, we must vacate that portion of the trial court's order.

We note that if, after an evidentiary hearing, the court were to find that the evidence established Tramber was denied counsel in relation to withdrawing his sentencing agreement and that he was prejudiced as a result, such as by the loss of his ability to directly appeal his conviction, Tramber would only be entitled to a penalty phase. He would not be entitled to an entirely new trial.

As to Tramber's remaining arguments – that the trial court abused its discretion in issuing a blanket order denying his motion for relief; that he was denied his right to appeal his sentence when his counsel failed to file a notice of appeal; that his counsel failed to object to the prosecutor's comments on the credibility of two witnesses; that he was denied a fundamentally fair trial when his counsel failed to request a mistrial related to comments the court made to the jury; that his trial counsel failed to properly impeach a witness; and that his counsel failed to object when the prosecutor defined "reasonable doubt" – we find no merit for purposes of RCr 11.42 relief and decline to address them further.

For the foregoing reasons, the Jefferson Circuit Court's order denying Tramber's motion for RCr 11.42 relief is vacated as set forth above, and this matter is remanded for further proceedings related to whether trial counsel was ineffective with regard to the sentencing agreement ground.

KRAMER, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Demarcus Tramber, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Frankfort, Kentucky